[Crim. No. 20508. Mar. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
GALE LORAINE McINTIRE, Defendant and Appellant.

**COUNSEL**

William L. Streitfeld, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield, John W. Carney and Beatrice W. Kemp, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Defendant appeals from a judgment of conviction on charges of possessing marijuana for sale. (Health & Saf. Code, § 11360, subd. (a).) She claims the trial court erred in rejecting evidence offered to establish a defense of entrapment and in refusing to instruct the jury on such defense.

We recently reviewed the entrapment doctrine in *People* v. *Barraza* (1979) *ante,* page 675 [153 Cal.Rptr. 459, 591 P.2d 947], and emphasized the deterrent purpose of the defense articulated in *People* v. *Benford* (1959) 53 Cal.2d 1, 9 [345 P.2d 928]: "California has recognized the defense for reasons substantially similar to those which caused this court . . . to adopt the rule that evidence obtained in violation of constitutional guaranties is not admissible; i.e., out of regard for its own dignity, and in the exercise of its power and the performance of its duty to formulate and apply proper standards for judicial enforcement of the criminal law, the court refuses to enable officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime." We concluded the defense should be applied according to an objective test, as Chief Justice Traynor had urged on behalf of three members of this court in *People* v. *Moran* (1970) 1 Cal.3d 755, 765 [83 Cal.Rptr. 411, 463 P.2d 763], and we formulated that test as follows: was the conduct of the law enforcement agent likely to induce a normally law-abiding person to commit the offense? Such an approach focuses on the methods used by the government to apprehend criminals and does not permit a defendant to be convicted when police conduct "falls below an acceptable standard for the fair and honorable administration of justice." (*Pascu* v. *State* (Alaska 1978) 577 P.2d 1064, 1067.)

■ Our decision in *Barraza,* however, was declared inapplicable (at fn. 5) to trials begun prior to the date the opinion became final; thus, we are constrained to apply herein the pre-*Barraza* subjective test for entrapment because defendant's trial preceded that decision. ■ The old rule looked not only to the unconscionability of police methods, but also to the criminal predisposition of the accused: the defense of entrapment was denied to defendants found to harbor a "preexisting criminal intent," no matter how overreaching the law enforcement activity may have been. (See, e.g., *People* v. *Braddock* (1953) 41 Cal.2d 794, 802 [264 P.2d 521].)

■ Because defendant claims error in the trial court's refusal to instruct the jury on entrapment, she need not establish the defense as a matter of law. Failure to give entrapment instructions constitutes reversible error when substantial evidence to sustain the defense is offered or introduced. (See *People* v. *Gregg* (1970) 5 Cal.App.3d 502, 504, fn. 1 [85 Cal.Rptr. 273], and cases cited therein.) ■ We must therefore determine whether defendant produced at her trial "(1) evidence that the Government initiated the crime, regardless of the amount of pressure applied to the defendant, and (2) any evidence negating the defendant's propensity to commit the crime." (*United States* v. *Watson* (3d Cir. 1973) 489 F.2d 504, 509.)

■ The principal prosecution witness was a Los Angeles police officer assigned to the narcotics section of the juvenile division. The officer testified that he had been posing as a high school student in order to detect drug traffic at the school; that in the course of this undercover assignment he met a student, Scott, who in turn introduced the agent to defendant's younger brother, Todd; that Scott had informed him Todd's sister was selling marijuana; that he met Todd for the first time on October 15, 1976; and that later the same day the agent received a brown paper bag from defendant containing two clear plastic baggies filled with plant material which was later identified as marijuana. The agent further testified that he actually saw Scott hand defendant $20 in payment for the marijuana.

The agent's testimony contains no evidence supporting an entrapment defense; his version was contradicted in a number of important respects, however, by the three defense witnesses. Scott claimed, for instance, that he had introduced Todd to the agent at least seven weeks prior to October 15, the date of the transaction involving defendant, and that he, Todd and the agent had met on numerous occasions prior to that date. Scott testified that the agent "always wanted dope. That was all he was ever talking about." The agent had asked Todd to supply dope for him "every time we were in a conversation." Scott insisted he had not represented to the agent that Todd's sister was dealing in drugs; in fact, prior to October 15 he was not aware that Todd had a sister. Finally, he testified that he had handed the money to Todd, not defendant, and that he never saw defendant handle the brown bag containing marijuana or receive any money for its sale.

Similarly, Todd testified he met the agent well before October 15 and was subjected to constant requests for marijuana. Todd denied having

ever told the agent his sister was selling marijuana that her boyfriend had brought from Hawaii as the agent had testified, and claimed his sister did not even smoke marijuana. Todd testified that the agent urged him to keep asking his sister to supply marijuana after she had indicated she didn't have any contraband and didn't know where to find any. After Todd persisted in his request, prompted by constant pressure from the police undercover agent, defendant finally responded that she "thought she might be able to get some."

Defendant's testimony supported and further developed the suggestion of entrapment present in the accounts related by the other defense witnesses. She claimed she had never been a marijuana dealer, had never sold marijuana to anybody, was not a regular user of marijuana, and had nothing to do with drugs. She facilitated the transaction at issue only because her younger brother had called every day asking her to find marijuana and she wanted to help him because of family difficulties—i.e., her brother was not "getting along" with her mother and stepfather and her mother was "crying to me about this bad situation." Thus she gave in to Todd's persistent urging, but did not herself receive any money, nor did she see any money change hands.

It is clear from the foregoing defense testimony elicited at trial that the jury, had it been instructed on entrapment, could reasonably have determined that the pre-*Barraza* elements of the defense—lack of criminal predisposition and improper government instigation—were established. There was substantial evidence from which the jury could have concluded that defendant was not involved in drug traffic and never had been; that she did not want to participate in the transaction herein, but acquiesced after constant urging by her younger brother because of sympathy aroused by family problems; and that the importuning from her brother was the direct result of strong and persistent pressure brought to bear by an undercover police agent. Such police conduct—manipulating an impressionable high school youth from a troubled family and using him to pressure his sister into committing a crime she was neither predisposed to nor desired to commit—constitutes precisely the sort of improper fostering of crime the entrapment defense is intended to prevent.

█ The trial court apparently accepted the prosecution claim that entrapment cannot be effected through an unwitting agent; because defendant's brother was not aware that the person importuning him to obtain marijuana from his sister was a police officer, the pressure he

applied in turn to defendant was not for the purpose of entrapping her and the defense was therefore unavailable. If such were the law, unconscionable law enforcement activity would be permitted so long as the target of entrapping agents was not reached directly but indirectly through the use of unsuspecting dupes.[1] Nothing in the doctrine of entrapment requires us to allow by indirection such an irrational and dysfunctional result.

The purposes of the entrapment defense can be fulfilled only if it is understood that one can act as the agent of a law enforcement official without realizing the identity of his principal; the unwitting agent, though he may not appreciate the true nature of his role, is nonetheless being manipulated as the officer's tool in a plan to foster a crime and entrap its perpetrator. In *Patty* v. *Board of Medical Examiners* (1973) 9 Cal.3d 356, 364 [107 Cal.Rptr. 473, 508 P.2d 1121, 61 A.L.R.3d 342], we recognized that "The function of . . . enforcement officials is to investigate, not instigate, crime; to discover, not to promote, crime." Improper governmental instigation of crime is not immunized because it is effected indirectly through a pliable medium.

Case law from other jurisdictions supports our conclusion that manipulation of a third party by law enforcement officers to procure the commission of a criminal offense by another renders the third party a government agent for purposes of the entrapment defense, even though the third party remains unaware of the law enforcement object. As one commentator has observed, "Despite his lack of intent to secure the defendant's arrest, his agency in such a situation seems apparent." (Note, *Entrapment* (1960) 73 Harv.L.Rev. 1333, 1342.) Thus, in *United States* v. *Klosterman* (3d Cir. 1957) 248 F.2d 191, 195-196 [69 A.L.R.2d 1390], the court reversed the conviction of one defendant, Stafford, because his codefendant, Deeney, had induced him to commit the offense at the urging of a law enforcement officer, King: "Deeney became King's agent for the purpose of entrapping Stafford." (*Id.,* at p. 196; see also *United States* v. *Mathues* (E.D.Pa. 1927) 22 F.2d 979; *Johnson* v. *United States* (D.C.Cir. 1963) 317 F.2d 127, 128-129; *id.,* at p. 133 (dis. opn. by Bastian, J.).)

 We therefore conclude that the evidence offered at trial herein warranted entrapment instructions and the jury should have been so

---

[1]Sufficiently gross police misconduct could conceivably lead to a finding that conviction of the accused would violate his constitutional right to due process of the law. (See, e.g., *People* v. *Isaacson* (1978) 44 N.Y.2d 511 [406 N.Y.S.2d 714, 378 N.E.2d 78].)

charged. ██ Inasmuch as entrapment was a crucial defense in the circumstances of this case, the court's refusal to instruct on the subject was manifestly prejudicial.

The judgment is reversed.

Bird, C. J., Tobriner, J., Clark, J., Manuel, J., and Newman, J., concurred.

Richardson, J., concurred in the result.