[Crim. No. 16201. Fourth Dist., Div. Two. Mar. 6, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE HARRIS, Defendant and Appellant.

## COUNSEL

Nicholas De Pento for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Keith I. Motley and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**\*—Charged with two counts of selling methamphetamine, defendant Robert Lee Harris waived trial by jury and submitted the matter on the transcript of the preliminary hearing. Defendant was found to be guilty as charged on both counts. Imposition of sentence was suspended and defendant was placed on probation for a period of three years with no time in local custody.

On this appeal from the judgment (order granting probation), defendant contends: (1) sanctions should have been imposed for failure to gather and preserve evidence potentially favorable to defendant; (2) defendant's motion for continuance should have been granted, and (3) the trial court erred in ruling certain defense evidence inadmissible.

---

\*Before Morris, P. J., Rickles, J., and Kaufman, J.

## FACTS

The transcript of the preliminary hearing, which was the evidence upon which defendant was tried and convicted, is not part of the record on appeal. As defendant does not challenge the sufficiency of the evidence to support the convictions, the omission is not of great significance. An adequate summary of the pertinent facts can be constructed from the existing appellate record and the appellate briefs.

Defendant, age 27, was living in El Cajon, near San Diego, while his friend of many years, Harold Edward Brown, was living in Banning, near Riverside. For a period of months or perhaps years defendant had been selling methamphetamine to Brown. According to Brown, his purchases were only for his personal use until April 1982 when he was arrested while attempting to resell some of the methamphetamine. Brown agreed to work with law enforcement to effect an arrest of defendant, who was Brown's supplier.

On April 29, 1982, Brown telephoned defendant and said an acquaintance wanted to purchase some methamphetamine. Defendant said he would have no problem delivering four to eight ounces. The call originated at the police station in Banning and was recorded on tape. On May 4, apparently by prearrangement, defendant telephoned Brown and said he would bring methamphetamine that afternoon and the price would be $1,500 per ounce. Later he phoned again to say he would reach Brown's house at 10:30 p.m. Both of these telephone calls were recorded.

Agent Crawford of the bureau of narcotics enforcement, posing as the buyer of the drug, arrived at Brown's residence and was introduced to defendant. After some negotiation and discussion, Crawford purchased a one-eighth ounce sample of pure methamphetamine for $250. Defendant said he had obtained the drug directly from the laboratory. He also said he could get four hundred pounds of marijuana and two to three pounds of cocaine.

A second transaction occurred on May 25. Defendant met Brown and Agent Crawford at Brown's place of employment. Defendant had slightly less than four ounces of methamphetamine which he sold to Crawford for $5,700. Defendant indicated he would be willing to supply eight ounces of methamphetamine per week and again asked if Crawford wanted to buy large quantities of marijuana. Defendant was then arrested.

I

Defendant brought a pretrial *Hitch* motion (see *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]) to obtain sanctions for the

failure to gather and preserve evidence. Defendant maintained that the investigating officers were selective in tape recording only the most incriminating telephone calls and that they had mysteriously failed to tape record the actual transactions even though Agent Crawford was wearing a body microphone and transmitter.

A hearing was held on this motion at which testimony was taken from Agent Crawford, Agent Barnes (also of the bureau of narcotics enforcement), Officer Michael Nava (of the Banning police) and Harold Edward Brown (the informant).

According to Officer Nava's testimony at the hearing, only four calls were recorded—three at the police station and one at Brown's residence—and all recordings were preserved and produced in court.

Brown, the informant, testified that two telephone conversations with defendant were recorded at his house and four or five were recorded at the police station. He also said that during one of the telephone conversations recorded at the police station Agent Crawford spoke directly to defendant.

Agent Crawford testified he talked to defendant on the telephone at least once, either from the police station or from Brown's house, but he could not recall whether the conversation was recorded. He remembered there was once a problem connecting a recording device to the informant's telephone.

Regarding the actual transactions, the testimony was that on the first occasion the signal from the body microphone transmitter was not strong or clear enough to be received by the SK-9 unit located in the surveillance van parked near Brown's house. The SK-9 unit, which had recording capability, had only a one-quarter-watt receiver. The surveillance officers were able to receive the transmission from the body microphone by using Handi-Talkies, which had five-watt receivers, but the Handi-Talkies did not have recording capability. At the second transaction, on May 25, the surveillance officers had only a single cassette tape with which to record the transmission from the body microphone. When they attempted to use it, they discovered the safety tabs on the housing of the cassette had been removed and the tape could not be used for recording.

On this evidence, the trial court denied the motion for sanctions. Defendant challenges this ruling. According to defendant, the evidence was sufficient to show that a fifth telephone call was recorded and the recording was destroyed or withheld. He also maintains that sanctions should have been

imposed for the negligent failure to record the transmission from the body microphone on May 25.

*People* v. *Hitch, supra,* 12 Cal.3d 641, held that an investigative agency must preserve material evidence on the issue of an accused's guilt or innocence. Sanctions must be imposed if material evidence has been lost either negligently or intentionally.

■ At a hearing on a *Hitch* motion the trial court is the finder of fact and the court's implied findings must be accepted if supported by substantial evidence. (See *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

■ Officer Nava's testimony was substantial evidence that only four telephone calls were recorded and all recordings were preserved and made available to the defendant. From the trial court's ruling denying the motion we may infer a finding in accordance with this evidence. Testimony by any of the other witnesses inconsistent with this finding was impliedly rejected by the trial court.

■ To date there is no authority for the proposition that sanctions should be imposed for a failure to *gather* evidence as opposed to a failure to preserve evidence. (*People* v. *Hogan* (1982) 31 Cal.3d 815, 851 [183 Cal.Rptr. 817, 647 P.2d 93]; *People* v. *Bradley* (1984) 159 Cal.App.3d 399, 408 [205 Cal.Rptr. 485]; *People* v. *Cooper* (1979) 95 Cal.App.3d 844, 850-851 [157 Cal.Rptr. 348].)[1] The Court of Appeal opinion on which defendant relies in his opening brief has been deleted by a grant of hearing in the case. (I.e., *In re Michael L.* (Crim. 23647, hg. granted Apr. 19, 1984).) Thus under present law the failure to record telephone conversations and the failure to record transmissions from a body microphone were not grounds for sanctions.

The denial of the *Hitch* motion was not error.

## II

■ After denial of the *Hitch* motion, defendant requested a one-month continuance of the trial to gather evidence for a renewed *Hitch* motion. The request for continuance was denied and this ruling is challenged on appeal.

---

[1]In *Hogan,* the Supreme Court suggested it might, in an appropriate case, require sanctions for a failure to gather evidence. While it is hazardous to second-guess our high court, in our opinion the present case is not one which would be appropriate for recognizing a duty to gather evidence.

In requesting the continuance, defendant said he would use the time to subpoena telephone records to substantiate the existence of a fifth telephone call. Even if defendant had substantiated the fifth call, this would not have entitled him to prevail on a renewed *Hitch* motion because the crucial fact was the number of recordings made, not the number of telephone calls.

Moreover, the motion was not supported by a proper showing of diligence (see Pen. Code, § 1050) nor has defendant shown any prejudice from the denial of the continuance. Defendant had over a year to prepare for the first *Hitch* motion and could have investigated telephone records during that time rather than delaying until the eve of trial. Even after denial of the continuance, defendant could have continued to investigate the telephone records and, if anything of significance were discovered, could have presented it by way of a motion during trial or a motion for new trial. Yet no showing has been made in the trial court or on appeal that the denial of the continuance resulted in actual prejudice. (*People* v. *Sewell* (1978) 20 Cal.3d 639, 646 [143 Cal.Rptr. 879, 574 P.2d 1231].)

### III

Defendant filed a trial brief in which he said he intended to prove that defendant's arrest was the fifth in a chain of drug arrests in the Banning area. Following each of the first four arrests, the person arrested agreed to turn informant and helped to secure the arrest of the next person on the chain. According to the trial brief, "the police exercised outrageous conduct in inducing each person arrested to form a chain for the next person to be arrested. The evidence will show the threats to induce these individuals in this chain included the following: a) If you do not cooperate, we will take your business; b) If you do not cooperate, you will be penniless; c) If you do not cooperate, we will take your children; d) If you do not cooperate, you will go to jail for many years; e) If you do not cooperate, you will be sexually raped in jail; f) If you cooperate, none of the above will happen to you."

At the outset of trial, the prosecutor moved to exclude evidence of any threats or promises to the informant Brown or other third parties. The trial judge reserved ruling until he had time to study the cited authorities. After the first witness had testified, the judge ruled the proposed evidence inadmissible because irrelevant or, if not wholly irrelevant, because the relevance was outweighed by confusion of the issues and undue consumption of time.

In challenging the ruling on appeal, defendant seeks to establish a defense which has never been sanctioned by California law but which has been

applied by state courts in New York. The defense is somewhat similar to the defense of entrapment, because it focuses on the legality and propriety of police conduct but it is much broader in scope and is based on considerations of due process.

The leading case is *People* v. *Isaacson* (1978) 44 N.Y.2d 511 [406 N.Y.S.2d 714, 378 N.E.2d 78], in which a young man with a history of drug abuse was arrested for possession of a controlled substance. During an interview following the arrest, a police officer struck the man "with such force as to knock him out of a chair, then kicked him, resulting in a cutting of his mouth and forehead." After his pretrial release, the police failed to inform him of the results of a lab test showing the capsules he was arrested for possessing contained no controlled substances but only caffeine. Upon the advice of his attorney, the man agreed to act as an informant and telephoned "various persons indiscriminately" for the purpose of setting up drug sales. He told at least one of these people, the defendant in the case under review, that he desperately needed drugs to make money to hire a decent attorney because he was facing 15 years to life in prison. The defendant eventually sold the informant a quantity of cocaine, was arrested and convicted, and appealed.

Relying on its state constitution, the court held that "even where a defense of entrapment is not made out because of the predisposition of the defendant to commit the crime, police misconduct may warrant dismissal on due process grounds." (*People* v. *Isaacson, supra,* 44 N.Y.2d 522 [406 N.Y.S.2d at p. 719].) Although each case should be decided on its own facts, the court gave the following list of factors as illustrative: "(1) whether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in an ongoing criminal activity [citations]; (2) whether the police themselves engaged in criminal of [*sic*] improper conduct repugnant to a sense of justice [citations]; (3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts such as sympathy or past friendship, by temptation of exorbitant gain, or by persistent solicitation in the face of unwillingness [citation]; and (4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace." (*Ibid.*)

The defense of outrageous police conduct, as expounded by *Isaacson*, has been mentioned just twice in California decisions. An opinion by our Supreme Court contains a footnote stating: "Sufficiently gross police misconduct could conceivably lead to a finding that conviction of the accused would violate his constitutional right to due process of law." (*People* v. *McIntire* (1979) 23 Cal.3d 742, 748, fn. 1 [153 Cal.Rptr. 237, 591 P.2d 527].)

A Court of Appeal decision, after a thorough discussion of *Isaacson* and related decisions of federal courts, concluded that the facts presented did not reveal gross police misconduct resulting in a violation of due process. (*People v. Peppars* (1983) 140 Cal.App.3d 677, 685-687 [189 Cal.Rptr. 879].)

■ In the present case, the trial court could properly exclude evidence regarding the three informants in the chain preceding Brown. The law does not recognize a defense of vicarious entrapment (*People v. Van Alstyne* (1975) 46 Cal.App.3d 900, 906-907 [121 Cal.Rptr. 363]) and should not recognize a defense of outrageous police misconduct where the conduct has only an indirect connection to the charge against the defendant. Any other rule would lead to confusion and uncontrollable proliferation of issues at trial. Evidence of statements to other informants could possibly be used at trial for impeachment, but the defense would ultimately have to stand or fall on police misconduct toward the informant directly involved in the transactions for which defendant was arrested.

Defendant did not offer to prove any physical mistreatment of the informant Brown. Rather than being urged to contact potential sellers indiscriminately, Brown was asked only to cooperate in arranging transactions with defendant, from whom Brown had regularly purchased in the immediate past. Thus the police involved themselves in ongoing criminal activity and were attempting to protect the public by tracing the flow of illegal drugs back to the source. Although defendant offered to prove that Brown used appeals to friendship to persuade him to enter into the transactions, this allegation could have been substantiated at trial by way of an entrapment defense and was in no way hampered by the court's ruling. By choosing not to put on a defense at trial, defendant waived this allegation.

■ This leaves only the alleged improper threats and promises. When examined at the sentencing hearing, Brown said he agreed to cooperate with the police because of "threats made that my children would be taken away until I, you know, my case was completely done and my business which is financed through my father, would be taken away also." He said there were no other threats and particularly no threat of sexual assault in prison.

Had the matter been inquired into more thoroughly, the "threats" would perhaps have turned out to be nothing more sinister than an accurate description of possible legal consequences of conviction and sentencing. Assuming, however, that the threats were completely improper, the police conduct was still not sufficiently outrageous to warrant dismissal of the charges against defendant. If the threats induced Brown to use improper pressure on defendant, an entrapment defense would have been available.

Also, we cannot ignore the evidence of the past sales by defendant to the informant nor the evident sophistication of defendant as indicated by his various statements to Agent Crawford while the sales were being arranged and transacted. Considering all the factors mentioned in *Isaacson,* the defense of outrageous police conduct could not be established.

The granting of the motion to exclude evidence of third party threats was not erroneous.

The judgment is affirmed.