[No. B045252. Second Dist., Div. Seven. Oct. 24, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
CHRISTOPHER WESLEY, Defendant and Respondent.

COUNSEL

Ira Reiner, District Attorney, Harry B. Sondheim, Deputy District Attorney, Rodolfo A. Aguirre and Martha E. Bellinger, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Michael Allensworth and Elizabeth Warner, Deputy Public Defenders, for Defendant and Respondent.

OPINION

LILLIE, P. J.—The People appeal from order setting aside an information (§ 995, Pen. Code) charging defendant (respondent) with one count of possession of cocaine (§ 11350, subd. (a), Health & Saf. Code) and alleging an enhancement for a prior drug conviction (§ 11370, subds. (a),(c)), Health & Saf. Code).

FACTS

The following facts were adduced at the preliminary hearing. Since July 1988, Officer Qualls, Pasadena Police, had been working a "reverse sting" operation[1] put together by the Neighborhood Crime Task Force, as an undercover narcotic seller. The operation involved about 10 officers. He had done this type of work approximately 10 times before.

Officer Qualls had training in and experience with narcotics, specifically, cocaine. In 1983 he received 40 hours' training regarding cocaine at the police academy; for 2 years he worked the streets as a patrolman where he made numerous cocaine arrests of sellers and users, and spoke with numerous informants. He then went to the vice narcotics section as a vice officer and made search warrants for cocaine violators, purchased cocaine undercover and spoke with numerous user and seller violators. He was trained by senior officers in the narcotic section and attended a 40-hour narcotics class in Sacramento put on by the state where he "rocked up cocaine." Subsequently, he went with the Drug Enforcement Administration in Los Angeles where he purchased kilogram quantities of cocaine, wrote federal search warrants and seized cocaine pursuant to search warrants. Two years later

---

[1] Law enforcement officers pose as street drug dealers, sell contraband to those who approach them and arrest the buyers for possession of the drug sold. This is the reverse of an undercover officer purchasing drugs from a drug dealer. The "reverse sting" is a law enforcement operation used to deter street drug trafficking.

he returned to Pasadena to the Patrol Section and once again made numerous cocaine arrests; from there he was transferred to the neighborhood crime task force where he wrote search warrants for cocaine violations and purchased and sold cocaine undercover; during this time he has seen cocaine "at least 500 times."

On April 25 1989, Officer Qualls was given 15 suspect cocaine rocks in a ziplock baggie by Sergeant Kirkpatrick; he examined them and, based upon his training and experience, formed the opinion the substance was rock cocaine. He then went out to 1763 Newport taking a stereo radio as a prop; he placed the radio on the ground and the 15 cocaine rocks in the ziplock baggie on the ground behind it; 4 other undercover officers (Carter, Alaniz, Peinado, Banuelos) were nearby. While Officer Qualls was standing on the sidewalk, defendant drove a vehicle southbound on Newport and pulled to the curb in front of 1753 Newport, 20 or 25 feet away; as defendant exited the car and walked over to him, he said to Qualls, "I need a dime"; the officer responded by nodding his head. Officer Qualls was familiar with street terms for rock cocaine and knew the term used by defendant meant he wanted $10 worth of rock cocaine; he looked at defendant for a few minutes, then reached down behind the stereo where he had the baggie, took one of the cocaine rocks out of it and handed the rock to defendant who handed him a $10 bill. Defendant turned and walked seven to ten feet away, then was taken into custody by Officer Carter in Officer Qualls's presence; present also was Officer Alaniz; defendant had the rock in his hand and at the time of his detention, threw the cocaine rock to the street, and it fell beneath the rear portion of a parked car. The transaction took place six to seven seconds before defendant was arrested; defendant had the rock cocaine in his hand about three seconds before he threw it down.

Neither Officer Qualls nor the police department ever had any intention of allowing defendant to get away with the rock cocaine. Officer Qualls saw Officer Carter immediately retrieve the rock from under the vehicle, examined it and identified it as the same one he had given to defendant; Officer Carter gave the rock to Officer Alaniz who put it into a baggie then showed it to Officer Qualls who initialed it; the content of the baggie was identified by Officer Qualls at the preliminary hearing as the same rock he saw defendant throw to the ground.

Based on his background and training, Officer Qualls testified that in his expert opinion the substance given to him by Sergeant Kirkpatrick was rock cocaine; he estimated its size as a quarter of an inch and its weight at about .20 grams which would sell on the street as a $20 increment of rock cocaine. He did not return any of the cocaine to Sergeant Kirkpatrick; asked on cross-examination how many sales he made during the evening, Officer

Qualls responded, "Myself I think I made 13"; the other officers were in the immediate area, the closest standing 7 to 10 feet away; they were all about the same distance; neither Officer Qualls nor any other officer waved defendant over to the location to get him to pull over or park nor did Officer Qualls make any kind of signal to indicate to people on the street that he was dealing, but "Once [defendant] got out of the car and said he needed a dime I nodded my head."

## MOTION TO SET ASIDE INFORMATION

Prior to the hearing before Judge Gilbert C. Alston in superior court, a People's motion under section 170.6, Code of Civil Procedure was filed, but stricken as untimely. After brief argument by the defense on its written motion to set aside information, Judge Alston granted the same and dismissed the matter finding first that the "reverse sting" program "is fatally flawed" and the Health and Safety Code prohibits "reverse sting" practices; second, "My colleague, Judge Tso, has felt that the most important point in this is the lack of dominion and control by the prospective defendant" because the police never intended to give nor did it ever give defendant "uncontested possession" of the cocaine rock; and third, there is no competent testimony that the substance was cocaine.

### I

## PEOPLE NOT BARRED FROM RAISING ISSUES ON APPEAL

■ The defense began argument on the motion to set aside information when Judge Alston interrupted to state the reasons he believed the motion should be granted; when he concluded, he addressed the prosecutor who, up to that time, had not been given an opportunity to speak against the motion, "So, for all those reasons, I do believe that the motion is well taken; however, we will hear from the prosecution, if the prosecution has anything to point out to the court that the court overlooked." The prosecutor's response thereto, "I think the court's analysis is on point. I'll submit it," respondent contends, bars the People from raising any issue on appeal because the prosecutor conceded, and did not object to or argue against, the granting of the motion.

Clearly, Judge Alston had already made up his mind to grant the motion, and all he really asked the prosecutor was if she had anything to point out that he had overlooked in his analysis. We do not interpret her response as a concession his analysis was correct; we do interpret it to be, "No, you have not overlooked any point in your analysis according to the written motion to set aside information, but I do not agree it is correct, however, inasmuch

as you have already made up your mind to grant it, I will submit it." Of course, what a submission means depends on the context in which it is made, and we conclude in the circumstances here that the submission without argument or objection was in no manner a concession the motion was well taken. We find nothing in the record that would serve to bar the People from raising the issues argued in their opening brief. Further, this is not a case in which respondent is required, for the first time on appeal, to defend against a new issue or theory. There could be no element of surprise to respondent, for these are hardly new issues. They are the very ones he raised on his written motion—insufficiency of the evidence, possession and due process. It was on his findings on these issues Judge Alston based his order, the same issues argued by the People on this appeal.

## II

### PROSECUTION OF DEFENDANT FOR POSSESSION OF COCAINE DOES NOT VIOLATE HIS CONSTITUTIONAL RIGHT OF DUE PROCESS

Raised by the defense on written motion to set aside information, was the due process issue. Although Judge Alston did not articulate this specifically in granting the motion and dismissing the matter, it is clear from his comments that due process was part of the basis for his order. ██ While "outrageous governmental conduct," as asserted by defendant in his written motion and urged by respondent here, is identified in most cases as a "defense" it is not, strictly speaking, a defense because, if successful, it results in the dismissal of the information whatever its merits. (*United States* v. *Bogart* (9th Cir. 1986) 783 F.2d 1428, 1432, fn. 1.) Thus, if established, it bars prosecution and is more than a denial of a "substantial right" during the preliminary process itself which would render the commitment by the magistrate unlawful within the meaning of section 995, Penal Code, which must be set aside upon timely motion. (*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 714-715 [135 Cal.Rptr. 392, 557 P.2d 976]; *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874-875 [59 Cal.Rptr. 440, 428 P.2d 304].) Defendant has always contended, and contends here, that the use of the contraband and the activity of the police in this "reverse sting" practice precluded his prosecution for possession of cocaine on due process grounds. We do not agree.

### A. *Use of the Cocaine*

 While Officer Qualls's possession of the rock cocaine was not legal, defendant's due process rights were not violated by his use of the cocaine in this operation, no matter how or from whom Qualls had obtained the cocaine.

First, the source of the contraband is not an element of the crime (possession of cocaine) with which defendant was charged. "The elements of the crime of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence of the drug and its narcotic character. [Citations.]" (*People* v. *White* (1969) 71 Cal.2d 80, 82-83 [75 Cal.Rptr. 208, 450 P.2d 600].)

■ Second, defendant had no constitutional or other right to purchase only unrecycled street cocaine which had not been obtained by police from another case, or only that which had not been illegally manufactured by police or, for that matter, *any* kind of cocaine at all regardless of the source. Indeed, *all* cocaine is contraband (§ 11054, Health & Saf. Code), and it is a crime to possess it (§ 11350, Health & Saf. Code) or manufacture it (§ 11379.6, Health & Saf. Code) or possess it for sale (§ 11351, Health & Saf. Code) or sell it (§ 11352, Health & Saf. Code); and possession or manufacture of cocaine is illegal, even when possessed or manufactured by police. (§ 11367, Health & Saf. Code). As to the possession by a duly authorized police officer, it is still a crime, but he is immune from prosecution under section 11367 if possession or sale occurs while investigating narcotic violations in the performance of his official duties. But there is simply no way at all in which defendant would have any immunity from prosecution; thus, we fail to perceive any "substantial right" of defendant that was implicated because of the source of the cocaine.

■ ■ Third, we conclude that the police use of the cocaine from a closed case did not here violate sections 11473 and 11473.5, Health and Safety Code,[2] and that *People* v. *Backus* (1979) 23 Cal.3d 360 [152 Cal.Rptr. 710, 590 P.2d 837] has no appropriate application to the instant case. In *Backus*, several narcotics officers were charged with conspiracy to obstruct justice of which one overt act was furnishing heroin to informants to use in aiding them in investigating narcotics violators. One ground for setting aside the information was that defendant officers were immune from prosecution under section 11367, Health and Safety Code. The Supreme Court reversed the order holding, as to the overt act of furnishing heroin, that defendant officers had committed a crime and, as a matter of law, did not

[2] Our record does not show an order to destroy the cocaine (seized in another case) was made. We presume that had such an order been made, the police would have complied with their official duty and destroyed the contraband. (§ 664, Evid. Code.) Inasmuch as neither section 11473 nor section 11473.5 specifies when the contraband must be destroyed, and section 1417.6, Penal Code requires that narcotics introduced or filed as an exhibit shall be destroyed and disposed of by order of the court no sooner than 60 days following final determination of the criminal action, we also presume on our record that the police were in possession of the evidence after conviction of the persons from whom it was seized but before the court ordered its destruction.

come within the statutory immunity because of the method by which the heroin was furnished.

Said the *Backus* court, *supra*, 23 Cal.3d at page 383, "Therefore, since 'furnishing' narcotics is an offense within the scope of the immunity grant, absent facts to show that the officer was not acting in the performance of his official duties in furnishing the heroin, the immunity afforded by section 11367 attaches. [¶] . . . If, however, defendants' method of furnishing heroin to their informants and agents violated provisions of law other than the penal provisions of division 10 of the Health and Safety Code, their actions were unauthorized and they were not performing their official duties." The heroin the officers furnished to informant Spears was seized from her in conjunction with her arrest, the source of the heroin given to informant Soria was unknown, and informant Martinez was given heroin seized in the arrest of others (pp. 383-384); but the significant factor was evidence that the heroin given to these informants, even though in aid of official narcotics investigations, would not be returned to law enforcement but would be consumed by them or again find its way onto the street.

Discussing the sections (former §§ 11474 and 11474.5, now §§ 11473 and 11473.5) which mandate the disposition of controlled substances seized by peace officers—upon conviction of the owner or defendant and direct that the judge shall order the destruction of controlled substances, or that, where no prosecution results, the seized contraband shall be turned over by police to the Attorney General for destruction or disposition under order of the court—the court said, "Defendants had no authority to otherwise dispose of any heroin seized from a person against whom charges related to possession of the heroin were contemplated or filed. Nor could they claim to reasonably believe that any part of such seized evidence could be diverted to their investigatory activities. Due process requires that criminal defendants have an opportunity to examine, and in appropriate cases have chemical tests performed on, evidence to be offered against them. [Citation.] It is not within the province of police officers to independently determine whether seized evidence might be favorable to a defendant, in which case intentional suppression or destruction denies due process. [Citations.]" (23 Cal.3d at p. 384.) The intent of the Legislature that controlled substances seized by peace officers not be dissipated or find their way back into the hands of persons not authorized to possess them, is demonstrated by the comprehensive legislative scheme for disposition of controlled substances held for and used in criminal prosecutions. (P. 385.) The court concluded that "In their failure to comply with the statutory provisions governing disposition of the heroin they seized and purchased, defendants acted outside the scope of their duties as peace officers" and there was no immunity from prosecution afforded by section 11367. (*Ibid.*)

*Backus* made it clear that it was not just that the contraband seized in other cases became unavailable because it was diverted by defendant officers with no return, but that it was given out to the informants by the officers with the intent and knowledge that it would be consumed by them or by resale be lost in the community. The evidence in the instant case presents a far different situation. It was not the officers who were prosecuted here, and there is no immunity issue. Defendant is the purchaser of the cocaine. And there is not here the diversion condemned in *Backus*. Neither Officer Qualls nor the police department ever intended to divert or dispose of the narcotic, nor did they do so. They did not intend that defendant consume it or resell it, nor did they intend to allow him to "get away" with the rock cocaine, and there were four officers nearby to make sure he did not. In fact, after defendant took only several steps away from Officer Qualls, he was taken into custody and the rock cocaine retrieved by Officer Carter. The cocaine was simply used as bait; it was intended to be and was retrieved by the officers after it served its purpose; it was produced in court and, after being received in evidence against defendant, the court ordered its return to the police department. Unlike in *Backus*, in which defendant officers were charged with conspiracy to obstruct justice of which dissipation of the heroin was a part, the officers here did not dispose of or dissipate the cocaine contrary to the statutory provisions governing the disposition of contraband (§§ 11473, 11473.5, 11485, Health & Saf. Code); and, consistent with the intent of the Legislature in enacting those sections, the cocaine did not find its way back into the hands of others for their consumption or for resale. The cocaine is still in law enforcement custody available for disposition by the court under appropriate statutes.

The possession of the rock cocaine by Officer Qualls was not legal, but we conclude there was no violation of the statutes governing the disposition of contraband. In any case, we fail to perceive in what manner the source of the cocaine or Qualls's illegal possession of the contraband would have affected defendant's criminal conduct or would have had a bearing on his due process rights. Further, Qualls's use of the cocaine in this operation, alone, would not constitute "outrageous governmental conduct."

Fourth, we find nothing in the Health and Safety Code which prohibits the kind of "reverse sting" operation used here. It is a legitimate law enforcement practice employed to deter street drug trafficking; and it is an operation recognized by our Supreme Court. After discussing the immunity granted by section 11367, the court in *Backus* said, ". . . this immunity reflects a legislative recognition that the investigation of suspected narcotics violations often necessitates the employment of undercover agents and persons secretly working under their direction who must pose as addicts, users, or *sellers*, and in doing so may be required to commit acts

which would otherwise violate division 10 by possessing, furnishing, selling, or transporting controlled substances." (23 Cal.3d at p. 382, fn. omitted, italics added.) The inclusion of "sellers" clearly contemplated the kind of "reverse sting" used here. Any controlled substance used as bait in such an operation necessarily would be contraband which law enforcement officers will eventually dispose of in compliance with the disposition sections of the Health and Safety Code. (*People* v. *Backus, supra*, 23 Cal.3d 360, 384-385.)

Finally, lack of accountability of the cocaine given to Qualls is hardly a valid argument. Officer Qualls was given 15 rocks of cocaine in a ziplock baggie by Sergeant Kirkpatrick. While it is true he made 13 sales and returned none of the cocaine rocks to Sergeant Kirkpatrick, there is no evidence the 2 rocks were consumed or returned to the street trade. There is a reasonable inference to the contrary. There were four other officers close by within a few feet of Officer Qualls; the cocaine rocks were in the baggie placed on the ground behind a stereo radio accessible to them, as well. It is a reasonable inference from Officer Qualls's answer to the question, how many sales he made that night—"Myself I think 13"—that other under-cover officers sold the 2 remaining.

B. *No Outrageous Governmental Conduct*

 ██ Given California, federal and out-of-state authorities and the record before us, we can only conclude that the police activity here did not rise to the level of outrageous governmental conduct which would preclude the prosecution of defendant on due process grounds.

If, as appellant asserts, the "defense" of outrageous police conduct has never been specifically approved by California law, our courts have come very close to acknowledging it. While not yet applied by the United States Supreme Court, it was recognized in *United States* v. *Russell* (1973) 411 U.S. 423, 431-432 [36 L.Ed.2d 366, 373, 93 S.Ct. 1637], "[W]e may some-day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . ." Nor has the California Supreme Court applied the doctrine, although in *People* v. *McIntire* (1979) 23 Cal.3d 742 [153 Cal.Rptr. 237, 591 P.2d 527], involving entrapment, the court said, "Sufficiently gross police misconduct could conceivably lead to a finding that conviction of the accused would violate his constitutional right to due process of the law. (See, e.g., *People* v. *Isaacson* (1978) 44 N.Y.2d 511 [406 N.Y.S.2d 714, 378 N.E.2d 78].)" (P. 748, fn. 1.) *Isaacson* has been cited by our appellate courts, and they have even recognized its four factor test, although not fully sanctioning the "defense"; but they have yet to find that due process was violated by the

conviction of an accused because of governmental conduct. (*People* v. *Towery* (1985) 174 Cal.App.3d 1114, 1133-1137 [220 Cal.Rptr. 475] [activities of government informer in theft of oil and sale thereof not "so pervasive as to render prosecution of the defendants otherwise violative of due process" (p. 1136)]; *People* v. *Harris* (1985) 165 Cal.App.3d 324, 330-331 [211 Cal.Rptr. 493] [police use of informants in chain of drug arrests does not establish outrageous conduct resulting in violation of due process]; *People* v. *Peppars* (1983) 140 Cal.App.3d 677, 686-687 [189 Cal.Rptr. 879] [undercover officer's involvement in planning stages of burglary does not offend due process by conviction of defendant of conspiracy to commit burglary]).[3]

*People* v. *Harris, supra*, 165 Cal.App.3d 324, reviewed the list of four illustrative factors used in *People* v. *Isaacson* (1978) 44 N.Y.2d 511 [406 N.Y.S.2d 714, 378 N.E.2d 78] and, comparing the facts with those in *Isaacson*, held that the defense of outrageous police conduct could not be established on the evidence sought to be proved by defendant. (P. 333.) But it questioned whether such a defense existed in California. "In challenging the ruling on appeal, defendant seeks to establish a defense which has never been sanctioned by California law but which has been applied by state courts in New York. The defense is somewhat similar to the defense of entrapment, because it focuses on the legality and propriety of police conduct but it is much broader in scope and is based on considerations of due process." (Pp. 330-331; *People* v. *Peppars, supra*, 140 Cal.App.3d 677, 685-687.)

In *People* v. *Isaacson, supra*, 44 N.Y.2d 511 [406 N.Y.S.2d 714, 378 N.E.2d 78], a man with a history of drug abuse was arrested for possession of a controlled substance and thereafter physically abused by police during an interview; later police learned from the lab the substance was in fact not a controlled one, but did not tell him, thus, he thought he was facing a long prison sentence, and agreed to be an informant; he telephoned various persons to set up drug deals in which police could arrest the seller. One of these, defendant Isaacson, a Pennsylvania resident, initially refused, but the informant persisted saying he desperately needed drugs to make money to hire a decent lawyer because he faced a long prison term; Isaacson finally agreed to sell, and was arrested. Additionally police used the informant to lure Isaacson for the sale into New York State, less lenient on drug violators. The court held the police conduct violated the state's due process clause. Although each case should be decided on its own facts, the court gave the following four factors to be considered in determining whether due

---

[3] *Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422 [233 Cal.Rptr. 487], involved the district attorney's intentional tampering with defendant's right to counsel; the court found this conduct to be highly improper justifying the sanction of dismissal on Sixth Amendment grounds. (P. 429.)

process principles had been violated. "(1) whether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in an ongoing criminal activity [citations]; (2) whether the police themselves engaged in criminal or improper conduct repugnant to a sense of justice [citations]; (3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts such as sympathy or past friendship, by temptation of exorbitant gain, or by persistent solicitation in the face of unwillingness [citation]; and (4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace." (378 N.E.2d at p. 83.) But these factors are only illustrative and "No one of these submitted factors is in itself determinative but each should be viewed in combination with all pertinent aspects and in the context of proper law enforcement objectives—the prevention of crime and the apprehension of violators, rather than the encouragement of and participation in sheer lawlessness." (378 N.E.2d at p. 83.)

In *Towery*, *Harris* and *Peppars* some police misconduct was such as to constitute entrapment, other conduct did not even rise to that level; but in all, the conduct directly affected defendant's participation in criminal conduct, yet in none, all factors articulated in *Isaacson* considered, could the defense of outrageous police conduct be established. ██ Unlike those cases and the federal cases fully discussed therein, the "reverse sting" operation here provided little opportunity for contact between police and defendant. Officer Qualls, a street decoy, simply provided the opportunity to commit the crime; defendant took the bait and was immediately arrested. It is the quality of the police conduct that is the final measure. There is nothing in this case that resembles *Isaacson*, or the federal cases in which the government agent targeted a specified individual, who was not predisposed to commit the crime, and through persistence, imposition or instances of coercion, encouraged him to engage in criminal conduct (*United States* v. *Bogart, supra,* 783 F.2d 1428, 1437; *United States* v. *Jacobson* (8th Cir. 1990) 893 F.2d 999, 1001), or the California cases. There was here no active or insistent encouragement or instigation by the police, nor did the police manufacture a crime which would not likely have otherwise occurred. Defendant was predisposed to commit the crime; he was looking for a cocaine dealer; it was he who sought Officer Qualls. Qualls never approached defendant or suggested the purchase of cocaine, nor did he ever indicate to defendant he was selling it, in fact, Qualls said nothing and did nothing; no one made any signal that Qualls was dealing; no one waved defendant or anyone over to Qualls to get defendant to stop; defendant was cruising for a dealer, he stopped his car and approached Qualls with "I need a dime"; Qualls only nodded, then looked at defendant for several minutes before making the transaction. All Qualls did was to make himself available

at a location where there was an ongoing street dealing problem in the neighborhood. The police did not engage in criminal or improper conduct repugnant to a sense of justice, such as physical abuse by police or imposition or coercion or resort to sympathy. True, Officer Qualls's possession of cocaine was illegal, but that and the deception of working undercover were no more than that inherent in any police undercover operation. Finally, the police motive was not simply to obtain a conviction of anyone, but to rid the area of street trafficking and help return neighborhoods that then belonged to the drug trade to the citizens, an appropriate law enforcement technique.

## III

### DEFENDANT COMMITTED WITH REASONABLE OR PROBABLE CAUSE

Judge Alston found (1) defendant had no dominion or control over the cocaine inasmuch as Officer Qualls never gave him "uncontested possession" of the contraband, and (2) there was no competent testimony the substance in fact was cocaine.

### A. *Possession*

While defendant's possession of the rock cocaine was brief because of his police detention, under the evidence, the magistrate was entitled to conclude defendant's possession was not for a guileless or temporary or innocent purpose. In *People v. Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], defendant briefly handled the narcotic for the sole purpose of disposal; the Supreme Court held this did not constitute possession within the meaning of the Health and Safety Code. But appropriately applicable here is the comment, "We emphasize that our decision in no way insulates from prosecution under the narcotics laws those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession. [Citations.] We leave intact the rule that from such conduct 'it could be inferred that defendant at one time exercised physical dominion' over the narcotic. [Citation.]" (P. 422; see also *People v. Sonleitner* (1986) 183 Cal.App.3d 364, 370 [228 Cal.Rptr. 96]; *People v. Hampton* (1981) 115 Cal.App.3d 515, 523 [171 Cal.Rptr. 312].) Whether prior to divesting himself of it defendant had dominion and control over the contraband sufficient to constitute possession was a factual issue, and the evidence supports the magistrate's implied finding that he had. "A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and, if there is some evidence to support the information, the court will not inquire into its sufficiency. [Citations.]" (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) There is no evidence here that defendant took possession of the co-

caine for any other purpose than his own; to the contrary, he told Qualls, "I need a dime"; this buy was not for a temporary or guileless or innocent purpose. He paid $10 for the rock cocaine and divested himself of the contraband only when he found he was being arrested. Although the police never intended to let defendant get away with the cocaine, on the other hand, it is obvious defendant intended to buy it for his own use.

### B. *Proof of Nature of The Substance*

 Officer Qualls was properly qualified as an expert in the field of narcotics, specifically cocaine; thereafter, when he testified that he examined the "item" given to him by Sergeant Kirkpatrick (subsequently, the identity of the rock was traced in Qualls's testimony from Kirkpatrick to him, to defendant, to Carter, to Alaniz, then to exhibit 1) and, based upon his training and experience, it was his opinion it was rock cocaine, the objection imposed was not that Qualls was not qualified to give an expert opinion but that there was "insufficient foundation for a scientific conclusion," which was overruled. Later the rock of cocaine was received in evidence without objection. On his motion to dismiss before the magistrate, defense counsel argued only that Qualls was never asked "the identity of the rock before the court so there is no indication of that rock's even suspected nature." Of course, he was in error and the magistrate had the record read. But the nature of the substance was neither argued nor mentioned by defense counsel on his motion to set aside information. Nevertheless, Judge Alston commented he did not think the rock was analyzed, and found "There is no competent testimony here as to what the substance was that is involved." Belatedly, respondent here argues that Qualls's expert testimony that the "item" was rock cocaine is not sufficient without chemical analysis testimony. The magistrate was satisfied with the expertise and the opinion of Officer Qualls, and for the purpose of holding defendant to answer, we are satisfied the evidence is sufficient.

First, we note that Officer Qualls's testimony was not that the substance "resembled cocaine," or "looked like" cocaine or "more likely than not" was cocaine or "appeared" to be cocaine, but that it was cocaine.[4] Second, this evidence was produced on the preliminary hearing not on a trial where the court or jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information

---

[4] After Officer Qualls gave testimony qualifying him as an expert in the field of narcotics, in particular cocaine, the following testimony was given: "Q [prosecutor] Did you make an analysis or observe the item that was given to you by Sgt. Kirkpatrick? [¶] [Officer Qualls] Yes. [¶] Did you examine that item? [¶] A I did. [¶] Q Based upon your training and experience did you have an opinion as to what that item was? [¶] A Yes. [¶] Q What was it? [¶] A Rock cocaine."

and of every essential element of that crime. ▆▆▆ " 'But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction . . . . *An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.* [Citations.]" ' [Citations.]" (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 637 [200 Cal.Rptr. 448, 677 P.2d 854], original italics.) ▆▆▆ Finally, it was reasonable for the magistrate to conclude Qualls was qualified to give an expert opinion as to the nature of the substance he sold to defendant, and reasonable for him to accept Qualls's expert opinion it was rock cocaine.

## DISPOSITION

The order setting aside the information and dismissing the causes is reversed.

Johnson, J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied November 21, 1990, and respondent's petition for review by the Supreme Court was denied January 17, 1991.