Filed 5/5/26  P. v. Escobedo CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>SANDRO ESCOBEDO,<br>    Defendant and Appellant. | C101171<br><br>(Super. Ct. No. 62-175958) |

A jury convicted defendant of various drug-related offenses (counts 1 through 8 and 12 through 14) and firearm-related offenses (counts 9 through 11), including being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1); count 9 [statutory section references that follow are to the Penal Code unless otherwise stated]) and being a felon possessing an assault weapon (§ 30605, subd. (a); count 10).  On appeal, defendant contends the trial court erred by denying his request to instruct the jury on entrapment and that this error violated his due process right to present a defense.  Defendant also argues the trial court erred by sentencing him separately for his possession of a firearm by a felon and possession of an assault weapon convictions.  He asserts one of these sentences must be stayed pursuant to section 654.  Concluding that the trial court properly found there was no substantial evidence to support an entrapment instruction, we affirm defendant's convictions.  However, we conclude that the trial court erred in

sentencing defendant separately on his firearm possession convictions and remand for resentencing consistent with section 654 to stay either one of defendant's firearm possession convictions.

FACTS AND HISTORY OF THE PROCEEDINGS

Roseville Police Department Detective Richard Rahn has conducted investigations involving Snapchat, a social media application in which users can post stories and send chat messages that, depending on the settings, disappear after 24 hours. Snapchat accounts require usernames and passwords, and the username may differ from the account's display name. Privacy settings permit users to post stories that only their friends can see.

Snapchat can be used as a criminal marketplace to sell illegal items. As part of his investigations conducted on Snapchat, Detective Rahn created user profiles with both male and female personas of various ages and interacted with other accounts to increase his Snapchat score to make his accounts appear legitimate.

In 2020, Detective Rahn began investigating a Snapchat account with the display name Titan, which was eventually tied to defendant through a previous narcotics investigation. Defendant's account was private and had a high user score. Detective Rahn successfully sent a friend request to defendant's account and began monitoring it.

Over the course of a few weeks in late October and early November 2020, Detective Rahn began seeing stories on defendant's Snapchat account about selling firearms and drugs, including marijuana, ecstasy, mushrooms, Xanax/alprazolam, and fentanyl. Detective Rahn came across these stories prior to conducting an undercover drug purchase from defendant.

After seeing the stories offering to sell drugs, Detective Rahn sought to purchase ecstasy from defendant more than once and was turned down "at least one other time" because it "[j]ust wasn't a good time," they "weren't able to meet," and it "[j]ust didn't

2

work out." Detective Rahn understood it to be a logistical reason that prevented them from meeting, not that defendant did not want to sell him drugs.

On November 12, 2020, defendant posted ecstasy pills for sale, and Detective Rahn, posing as an adult female, replied to the post to purchase eight ecstasy pills. Defendant agreed to sell Detective Rahn drugs, replying, "sure." Detective Rahn told defendant "she" needed the ecstasy for a party and invited him to attend. Defendant declined, saying he was too old. Detective Rahn replied that defendant was not too old and invited him again. Detective Rahn did not recall offering sexual favors in exchange for the drugs and did not typically do so when he was undercover.

Eventually, defendant and Detective Rahn arranged to meet, and defendant arrived alone to the agreed-upon location. Officers at the location of the meeting stopped defendant and saw psilocybin mushrooms in plain view in his car. Officers searched defendant's car and found various other drugs and drug paraphernalia consistent with the drugs defendant had posted for sale on Snapchat.

Officers arrested and interviewed defendant. During the interview, defendant admitted the Titan Snapchat account belonged to him. Defendant was released on bail, and Detective Rahn continued to monitor defendant's Snapchat account. Defendant made multiple Snapchat posts of drugs and a gun for sale as well as warning others not to sell to strangers because the Roseville Police Department was going after people.

On December 2, 2020, officers executed a search warrant at defendant's house. In defendant's room and guestroom, officers found various drugs, including multiple types of pills and drug paraphernalia. The quantity of pills found was indicative of sales. A search of the living room revealed a shoebox containing an unregistered nine-millimeter handgun with a threaded barrel that had been disassembled, a firearm magazine, and plastic baggies, which are often used in drug sales. The handgun was similar to, and possibly was, the firearm posted for sale on defendant's Snapchat account. In the house, law enforcement officers found over three pounds of marijuana. They found four cell

phones during the search, including one on defendant and one in his car. Having multiple cell phones can indicate drug sales.

A search of defendant's car revealed two live nine-millimeter bullets, a .45-caliber cartridge, and a plastic baggie containing 10 purple ecstasy pills imprinted with a marijuana leaf.

A jury found defendant guilty of the following crimes: transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a); count 1), possession for sale of a controlled substance (Health & Saf. Code, § 11351; counts 2 and 12), possession for sale of a designated controlled substance (Health & Saf. Code, § 11375, subd. (b); count 3), transportation of a controlled substance for sale (Health & Saf. Code, § 11379; counts 4 and 6), possession for sale of a controlled substance (Health & Saf. Code, § 11378; counts 5, 7, and 13), possession for sale of cannabis (Health & Saf. Code, § 11359, subd. (b); counts 8 and 14), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 9), possession of an assault weapon (§ 30605, subd. (a); count 10), and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 11).

The trial court sentenced defendant to a total of 13 years 4 months in prison, which included a sentence of one-third the middle term of eight months consecutively on his convictions for being a felon in possession of a firearm and possessing an assault weapon.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

### *Entrapment*

Defendant contends the trial court erred by refusing his request to instruct the jury on entrapment and thereby violated his due process right to present a defense. He asserts substantial evidence supported an entrapment defense, requiring reversal on all counts.

4

As substantial evidence of entrapment, defendant claims Detective Rahn had continued to try to buy drugs from defendant after defendant repeatedly turned him down; Detective Rahn twice invited defendant to a party and told defendant he was not too old to attend the party; and it was possible that Detective Rahn had offered sexual favors in exchange for drugs. Under all the circumstances including the fact that defendant initiated the criminal activity by posting drugs for sale on Snapchat, no substantial evidence supported instructing on entrapment. The trial court did not err by refusing to instruct on entrapment.

Additional Background

During pretrial proceedings, defense counsel said the defense "might potentially be putting on an entrapment defense."

After the evidence had been presented, defense counsel asked the court for a ruling on his previous request for an entrapment instruction. The trial court said the question was whether substantial evidence supported giving the instruction.

Defense counsel asserted defendant's character, predisposition to commit the crime, or his subjective intent were irrelevant as to entrapment and the proper focus was on the officer's conduct and how a normally law-abiding person would respond to it. Defense counsel argued that defendant had turned down Detective Rahn's first two requests to purchase drugs and that Detective Rahn's enticements (a party invitation) and flattery (comments regarding defendant's age) qualified for an entrapment instruction.

The prosecution argued that entrapment contemplates a person who is not predisposed to committing the crime and based on defendant's Snapchat posts offering the sale of drugs, no reasonable juror could find that he was not already predisposed to selling drugs. The prosecution asserted Detective Rahn invited defendant to the party as a place to meet only after a deal had been struck, which did not constitute coaxing; and defendant only turned down Detective Rahn's previous attempts to purchase drugs

5

because they were unable to meet. Arguing there was not substantial evidence of entrapment, the prosecutor distinguished between defendant's online offers to sell drugs from cases in which law enforcement officers approach people to purchase drugs, and claimed an individual cannot be entrapped if he is advertising drugs and someone replies asking to purchase those drugs.

The trial court denied the defense request, finding that the slight evidence of persuasion did not amount to substantial evidence of entrapment. It further found that no reasonable juror could conclude that the evidence, even considered in the best light of the defense, demonstrated that an entrapment instruction would apply.

Analysis

"The trial court was required to instruct the second jury on the defense of entrapment if, but only if, substantial evidence supported the defense." (*People v. Watson* (2000) 22 Cal.4th 220, 222.) The California test for entrapment is objective which focuses on law enforcement conduct, including an initiation of the offense. (*People v. Barraza* (1979) 23 Cal.3d 675, 689-690; CALCRIM No. 3408 [primary focus in evaluating entrapment defense is officer's conduct]; see *People v. McIntire* (1979) 23 Cal.3d 742, 746.) This objective test was "designed primarily to deter impermissible police conduct…." (*Barraza,* at p. 691, fn. 5.) "Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense." (*Watson,* at p. 223.) "[W]e presume that such a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully." (*Barraza, supra,* at p. 690.)

While law enforcement conduct that simply provides an opportunity to commit a crime, such as a decoy program, is permissible, it is impermissible for law enforcement "or their agents to pressure the suspect by overbearing conduct such as badgering,

6

cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." (*People v. Barraza, supra,* 23 Cal.3d at p. 690.)

Other examples of officer actions that may constitute entrapment include conduct such as "persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy" or other acts "that would make commission of the crime unusually attractive to a normally law-abiding person." (CALCRIM No. 3408.) If an officer simply gave "the defendant an opportunity to commit the crime or merely tried to gain the defendant's confidence through reasonable and restrained steps, that conduct is not entrapment." (CALCRIM No. 3408.)

We review de novo whether substantial evidence supports giving a requested instruction. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.) Substantial evidence is "evidence sufficient for a reasonable jury to find in favor of the defendant." (*People v. Salas* (2006) 37 Cal.4th 967, 983.) "Doubts as to the sufficiency of the evidence should be resolved in the accused's favor." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145.)

The record on appeal does not contain substantial evidence of entrapment. Even considering the evidence in a light favorable to the defense, it is undisputed that defendant posted drugs for sale on Snapchat over the course of a few weeks prior to and independent of Detective Rahn contacting him to purchase drugs. There is no evidence of impermissible officer conduct. Detective Rahn did nothing more than offer to buy drugs that defendant was advertising for sale on Snapchat, an offer that defendant accepted. Detective Rahn's party invitations and comment on defendant's age occurred after defendant had been posting drugs for sale on Snapchat for weeks. At most, these actions amounted to accommodating the sale, not undue coaxing or flattery. These actions were insufficient to make the offense "unusually attractive to a normally law-abiding person." (CALCRIM No. 3408.) In these circumstances, instructing on entrapment would not serve to deter police misconduct. (*People v. Barraza, supra,*

7

23 Cal.3d at p. 691, fn. 5.) Accordingly, the trial court properly declined to instruct on entrapment.

Finally, because we find no error in the trial court's decision not to instruct on entrapment, we need not address defendant's due process claim.

II

*Section 654*

Defendant contends the trial court erred under section 654 by imposing separate punishments for being a felon in possession of a firearm and possession of an assault weapon. The Attorney General agrees.

Section 654 states in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." " ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." ' (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507, italics omitted.)" (*People v. Capistrano* (2014) 59 Cal.4th 830, 885, overruled on other grounds in *People v. Hardy* (2018) 5 Cal.5th 56, 104.)

" ' "The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support [the] finding the defendant formed a separate intent and objective for each offense for which he was sentenced." ' (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)" (*Capistrano, supra,* 59 Cal.4th at p. 886, fn. omitted.)

The evidence does not support the trial court's decision to impose separate punishments for defendant's convictions for being a felon in possession of a firearm and

8

possession of an assault weapon. These convictions arose from possession of the same weapon. Specifically, law enforcement officers found a handgun in a shoebox located in defendant's living room, which was the basis for both firearm possession convictions. Accordingly, defendant may only be punished once for his act of possessing the handgun. (*People v. Jones* (2012) 54 Cal.4th 350, 357 ["a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654"].) Remand is required for resentencing consistent with section 654.

## DISPOSITION

We affirm defendant's convictions. The matter is remanded to the trial court for resentencing consistent with this opinion. After resentencing the superior court clerk is directed to prepare an amended abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation.

/s/
HULL, J.

We concur:

/s/
EARL, P. J.

/s/
MESIWALA, J.

9