[No. B092858. Second Dist., Div. One. Aug. 7, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE ESTER HOLLOWAY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

_____

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

COUNSEL

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Kenneth N. Sokoler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ORTEGA, J.—Willie Ester Holloway, among others, bought rock cocaine from undercover police officers posing as drug sellers in a reverse sting operation designed to catch and deter drug traffickers plaguing many neighborhoods. Holloway appeals from the judgment entered following his resulting conviction by the court of possessing cocaine. (Health & Saf. Code,

§ 11350, subd. (a).) Holloway also admitted a prior serious felony conviction. (Pen. Code, § 667, subds. (b)-(i).)[1] He received a 16-month lower term, doubled under the legislative three strikes law (§ 667, subds. (b)-(i)), for a total 32-month sentence.

## ISSUES AND HOLDING

Holloway challenges three alleged trial court errors. (I) During the operation that resulted in his arrest, the police used rock cocaine manufactured from powder cocaine, planned to offer small samples of rock cocaine to potential buyers if necessary to complete sales, and failed to recover all cocaine used in the program. Holloway argues this activity constituted outrageous police conduct for which the trial court should have dismissed his case. (II) In this nonbifurcated court trial, the People did not present evidence of Holloway's prior conviction before the trial court convicted him of cocaine possession. Holloway argues the trial court erroneously permitted the People to reopen, over his double jeopardy objection, to prove his prior conviction. (III) Holloway raises several challenges to the three strikes law. In addition, for the first time in their response brief, the People, who did not appeal, contend (IV) Holloway's presentence custody credits should be reduced.

In the published portion of this opinion, we reject Holloway's first two contentions. (I) We find the outrageous police conduct defense exists independent of the entrapment defense. However, none of the challenged police conduct was aimed at Holloway and most did not occur in his case. The outrageous government conduct defense cannot be asserted vicariously. (II) We also find that, because the trial was not finished, and Holloway earlier told the prosecutor he would admit the prior conviction, the double jeopardy prohibition was not violated. In the unpublished portion of the opinion, we reject all but one of Holloway's challenges to the three strikes law. We remand the matter for resentencing for the trial court to exercise its discretion whether to dismiss Holloway's strike. We also reject the People's contention (issue IV). We remand for resentencing and otherwise affirm the judgment.

## FACTS

On April 13, 1994, Santa Monica Police Investigator Maury Sumlin obtained a court order permitting the Los Angeles County Sheriff's Crime Laboratory to process 116.31 grams of cocaine powder, seized in an unrelated, closed case, into rock cocaine. The order permitted the manufactured

---

[1]Unless otherwise noted, all further section references are to the Penal Code.

rock cocaine to be combined with other rock cocaine seized in other closed cases for use in a reverse sting operation designed to arrest cocaine sellers, buyers, and users at several spots in the city plagued by drug activity.

Sumlin's declaration supporting the requested order stated: "[T]he locations to be used for these operations are the subject of an ongoing investigation. The investigation was initiated because of numerous citizen complaints of narcotics trafficking and supported by a high number of arrests for the trafficking of controlled substances. Santa Monica Police officers have made numerous undercover purchases of controlled substances at these locations recently. [¶] . . . At present, 'rock cocaine' is the normal type of cocaine sold at these locations." The court order required the rock cocaine be used only as part of the undercover reverse sting operation. Any cocaine not so used was to be returned to the police property division and accounted for. The order stated "that should the suspect request a sample to test the quality of the cocaine that Investigator Maury Sumlin may allow up to three (3) grams of cocaine to be used to consummate the transaction."

On the evening of April 29, 1994, Santa Monica police officers conducted an undercover reverse sting operation on the Arizona stairs in Palisades Park. Much drug trafficking and related arrests occurred there. The operation was designed to reduce drug sales and purchases in the area. Officers Sipos and Acosta posed as drug sellers. Sipos stood near the top of the stairs, and Acosta was below at the second landing. Holloway approached and contacted Sipos. After a brief conversation, Sipos and Holloway walked closer to the stairs. Sipos pointed to Acosta and told Holloway " 'go down to that guy right there, he's the one that's holding.' "

Holloway approached Acosta. The two men had a discussion, "briefly . . . arguing over the amount of money that [Holloway] had . . . ." Acosta asked Holloway "if that was all he had." Holloway answered " '[Y]eah, man, that's all[.]' " Acosta took some rock cocaine from a container and showed it to Holloway. Holloway handed Acosta $7 in currency, and Acosta handed Holloway three pieces of rock cocaine worth a total of about $60 if resold. Acosta told Holloway " '[Y]ou're gonna like this shit.' " Holloway looked at the drugs in his hand. As Holloway turned around, other nearby undercover officers posing as potential drug buyers approached and arrested him. Before the officers could reach him, he threw away the cocaine bought from Acosta. Two pieces of rock cocaine hit a nearby wall and were recovered by the officers. Two pieces went over the wall and were not recovered.[2]

In addition to Holloway, the police arrested about 50 other people who approached and bought drugs from them that evening. Several other pieces

---

[2]The record does not explain how the three pieces of rock cocaine Holloway bought from Acosta became four pieces when Holloway threw them away.

of rock cocaine were lost over the wall during the other arrests. At least one officer searched the area over the wall and recovered one piece of rock cocaine. The same officer recovered several other pieces which were thrown or dropped where the arrests were made.

The trial court denied Holloway's section 995 motion based on alleged outrageous government conduct. The trial court later denied a similar motion made at trial, stating: "I do not find what occurred here constituted outrageous police conduct. I agree with [Holloway] that we do have a theory and a vehicle for testing the due process treatment of a defendant, and the outrageous government conduct [claim] is a valid inquiry. I just don't believe it occurred in this case. [¶] I disagree with [*State* v. *Williams* (Fla. 1993) 623 So.2d 462]. I can't believe that the fact that the police take confiscated powder cocaine and turn it into rock cocaine because that's what's sold in a particular location constitutes outrageous police conduct, nor the fact that the people who come to the police or who are willing to buy cocaine from the police try to throw it makes that conduct outrageous. [¶] I think this case is distinguished from [*People* v. *Backus* (1979) 23 Cal.3d 360 (152 Cal.Rptr. 710, 590 P.2d 837)] wherein there in fact were sort of unconditional conveyances of heroin to known informants. In this situation, once the person purchased and took possession of the cocaine, it was the intention of the police and in fact the history of this operation that the police would retrieve the cocaine as far as possible. That a little was lost does not make that outrageous."

DISCUSSION

### I. *Outrageous Police Conduct.*

Before deciding if the challenged police conduct was improper enough to warrant dismissal, we must determine whether this defense exists independent of the related entrapment defense. ■ "[T]he proper test of entrapment in California is the following: was the conduct of the law enforcement agent likely to induce a normally law-abiding person to commit the offense? For the purposes of this test, we presume that such a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.

■ "Although the determination of what police conduct is impermissible must to some extent proceed on an ad hoc basis, guidance will generally be

found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement.

■ "Finally, while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission. [Citation.] We reiterate, however, that under this test such matters as the character of the suspect, his predisposition to commit the offense, and his subjective intent are irrelevant." (*People* v. *Barraza* (1979) 23 Cal.3d 675, 689-691 [153 Cal.Rptr. 459, 591 P.2d 947], fns. omitted.)

The court further explained: "There will be no entrapment, however, when the official conduct is found to have gone no further than necessary to assure the suspect that he is not being 'set up.' The police remain free to take reasonable, though restrained, steps to gain the confidence of suspects. A contrary rule would unduly hamper law enforcement; indeed, in the case of many of the so-called 'victimless' crimes, it would tend to limit convictions to only the most gullible offenders." (*Id.* at p. 690, fn. 4.)

Both below and on appeal the parties agree there is no evidence of entrapment here. We agree. The police merely posed as drug buyers and sellers in a notorious drug trafficking area. Holloway approached the police, not vice versa. Holloway was not a target of the operation, which was designed to deter drug trafficking in the area by arresting everyone who tried to participate in the business. While the police sold Holloway the drugs at less than resale value, they did so only after trying to negotiate a higher price, which Holloway insisted he could not meet. Thus, as a matter of law, there was no entrapment here.

■ The California entrapment doctrine is known as an objective defense because it focuses exclusively on police conduct and ignores the suspect's

subjective intent or any predisposition to commit the crime. However, the court made clear that the basis of the defense is to deter police misconduct. (*People* v. *Barraza, supra,* 23 Cal.3d at pp. 688-689.) The outrageous police conduct defense is related to the entrapment defense and is based on the due process clause. (See 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 270, p. 310; 1 LaFave & Scott, Substantive Criminal Law (1986) Entrapment, § 5.2(g), pp. 610-613.) Holloway's claim raises two related questions. First, does the outrageous police conduct defense exist in California independent of the entrapment defense? Second, if so, does the police conduct here rise to that level?

Under federal law, unlike California's, the entrapment defense is a subjective one. Defendants asserting the defense must show both that the government induced their participation in the crime, and that they were not predisposed to commit the crime. The defense is statutory, not constitutional, and is based on the rationale that Congress could not have meant for the government to lure those not predisposed to commit crimes into violations. (*United States* v. *Russell* (1973) 411 U.S. 423, 428-431 [36 L.Ed.2d 366, 371-373, 93 S.Ct. 1637].) In *Russell,* the Supreme Court refused to reconsider the federal entrapment rule. The court upheld drug manufacturing convictions although an undercover officer supplied a scarce manufacturing ingredient. The court rejected the defense claim that government conduct constituted either entrapment or a constitutional due process violation, noting: "While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, [citation], the instant case is distinctly not of that breed." (*Id.* at pp. 431-432 [36 L.Ed.2d at p. 373].) The United States Supreme Court has never reversed a conviction on such grounds. Some federal circuits have discussed the constitutional due process claim of outrageous police conduct as protecting against undue government involvement in inducing even a predisposed defendant to participate in crime. (See, among others, *United States* v. *Twigg* (3d Cir. 1978) 588 F.2d 373, 376-380 [reversing convictions because of outrageous government conduct which did not constitute entrapment]; *United States* v. *McQuin* (9th Cir. 1980) 612 F.2d 1193, 1196 [acknowledging the defense in general, but rejecting it on its facts, and affirming the conviction].)

Given that the California entrapment rule is objective rather than subjective, it arguably provides defendants more protection from overreaching police conduct than the federal rule. Thus, the first question, posed above, is whether the outrageous government conduct defense exists in California independent of the entrapment defense. In reversing a drug possession for

sale conviction for wrongly excluding defense entrapment evidence and refusing to give entrapment instructions, our Supreme Court stated in dictum: "Sufficiently gross police misconduct could conceivably lead to a finding that conviction of the accused would violate his constitutional right to due process of the law. (See, e.g., *People* v. *Isaacson* (1978) 44 N.Y.2d 511 [406 N.Y.S.2d 714, 378 N.E.2d 78].)" (*People* v. *McIntire* (1979) 23 Cal.3d 742, 748, fn. 1 [153 Cal.Rptr. 237, 591 P.2d 527].)

Later, in upholding liquor license suspensions of stores which sold liquor to underage but mature-looking police decoys as part of an undercover sting operation, the Supreme Court found the police use of underage decoys, as a matter of law, was not entrapment. (*Provigo Corp.* v. *Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 568-569 [28 Cal.Rptr.2d 638, 869 P.2d 1163] (hereafter *Provigo*).) The court continued: "Nor did any due process violation occur. (See *United States* v. *Russell, supra*, 411 U.S. at pp. 431-432 . . . [due process may bar criminal convictions if 'outrageous' conduct by law enforcement officers]; cf. *People* v. *Thoi* (1989) 213 Cal.App.3d 689, 695-697 . . . , and cases cited.) Assuming arguendo that the *Russell* doctrine applies in this state (but see *Thoi, supra*, 213 Cal.App.3d at p. 696), the mere use of underage decoys to enforce the liquor laws would not constitute outrageous conduct. . . . [¶] [The stores] argue that their due process rights were abridged because the police violated the Constitution by arranging for the purchase of alcoholic beverages by the minor decoys. As we have observed, it is doubtful the Constitution may be construed as forbidding the use of minor decoys. Assuming such a violation occurred, it was at most a technical one that could not be deemed so 'outrageous' as to afford a defense to prosecution." (*Provigo, supra*, 7 Cal.4th at p. 570.)

In another context, the Supreme Court found that police officers who gave illegal narcotics to drug-addicted informants during the officers' investigations of the informants' drug suppliers were not shielded from prosecution by Health and Safety Code section 11367, which grants immunity to police officers and those "working under their immediate direction, supervision or instruction." The court stated: "[T]he immunity granted by [Health and Safety Code] section 11367 is not a license to peace officers to commit any and all otherwise unlawful acts in the pursuit of narcotics law enforcement objectives. Rather, this immunity reflects a legislative recognition that the investigation of suspected narcotics violations often necessitates the employment of undercover agents and persons secretly working under their direction who must pose as addicts, users, or sellers, and in so doing may be required to commit acts which otherwise violate [the Health and Safety Code] by possessing, furnishing, selling, or transporting controlled substances." (*People* v. *Backus* (1979) 23 Cal.3d 360, 382 [152 Cal.Rptr. 710, 590

P.2d 837], fns. omitted.) The court reversed the granting of a section 995 motion and dismissal of an indictment charging the officers with conspiring to give the informants drugs to maintain their addiction during investigation of the informants' drug suppliers. The court did not discuss the due process clause or the outrageous government conduct defense.

As noted by the *Provigo* court, one Court of Appeal opinion, although arguably in dictum, rejected the application of the outrageous police conduct defense in entrapment cases, finding it subsumed by the entrapment defense. The court nonetheless rejected the defense on its merits. (*People* v. *Thoi* (1989) 213 Cal.App.3d 689, 695-697 [261 Cal.Rptr. 789].) The *Thoi* court affirmed the convictions, also rejecting a claimed entrapment defense. However, several other Courts of Appeal, while rejecting the outrageous police conduct defense on their facts, have addressed it in entrapment situations. (*People* v. *Wesley* (1990) 224 Cal.App.3d 1130, 1142-1145 [274 Cal.Rptr. 326]; *People* v. *Towery* (1985) 174 Cal.App.3d 1114, 1133-1137 [220 Cal.Rptr. 475]; *People* v. *Harris* (1985) 165 Cal.App.3d 324, 330-332 [211 Cal.Rptr. 493]; *People* v. *Peppars* (1983) 140 Cal.App.3d 677, 685-687 [189 Cal.Rptr. 879].)

We disagree with *Thoi* to the extent that it rejects the defense in entrapment cases. While generally under California entrapment law the focus is on whether police instigated or created the crime, other overreaching by the police at the investigatory stage could be so outrageous as to taint the subsequent arrest. We agree with *Thoi* that the defense has been recognized, resulting in dismissals, where other government actors, such as prosecutors, have acted so outrageously as to violate a nonentrapped defendant's due process rights. (*People* v. *Thoi, supra*, 213 Cal.App.3d at p. 696, fn. 3; see, among others, *Morrow* v. *Superior Court* (1994) 30 Cal.App.4th 1252 [36 Cal.Rptr.2d 210] [prosecutor ordered her investigator to eavesdrop on the defendant's courtroom conversation with his lawyer]; *Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422 [233 Cal.Rptr. 487] [as part of negotiations with defendant, prosecutor ordered defendant to discharge his lawyer and hire another].) We see no principled distinction between those cases and ours. We find the outrageous police conduct defense exists even in entrapment defense cases.

■ However, neither the outrageous police conduct nor entrapment defense can be asserted vicariously by defendants not themselves affected by the alleged police overreaching. (*Hampton* v. *United States* (1976) 425 U.S. 484, 490 [48 L.Ed.2d 113, 118-119, 96 S.Ct. 1646]; *People* v. *Thoi, supra*, 213 Cal.App.3d at p. 696, fn. 3; *People* v. *Towery, supra*, 174 Cal.App.3d at p. 1134; *People* v. *Harris, supra*, 165 Cal.App.3d at p. 332.) Here, of the

three factors Holloway claims evince outrageous conduct, i.e., manufacturing the more dangerous rock cocaine, offering samples if necessary to complete the sale, and failing to recover all the drugs, two do not exist in his case, and none was directed at him. First, there was no evidence the rock cocaine Holloway bought was manufactured by the police. Based on this record, we cannot say Holloway bought the manufactured, as opposed to the preexisting, rock cocaine. Second, Holloway neither asked for, was offered, nor consumed or otherwise tested a sample. Thus, while these first two factors may have applied to some other arrested drug purchasers, there is no evidence they applied to Holloway. Third, although some of the drugs Holloway bought were lost, the police neither intended that result, nor failed to try to find the drugs Holloway discarded. Thus, the allegedly wrongful police conduct was neither directed at Holloway, nor present in his contact with the police. While this police activity unintentionally may have endangered the community it was designed to protect, it had no effect on Holloway's police contact or arrest. Thus, Holloway cannot claim the benefits of the outrageous conduct defense on these facts. (*People* v. *Wesley*, *supra*, 224 Cal.App.3d at pp. 1138-1145; cf. *State* v. *Williams* (Fla. 1993) 623 So.2d 462 [police manufacture of crack cocaine defendant bought from undercover officers, from powder seized in an unrelated case, where some of the drug was lost during the operation, violated state due process clause].)

## II. *Double Jeopardy Regarding the Prior Conviction.*

In addition to the cocaine possession charge and the one admitted prior conviction, Holloway's information originally charged him with an additional prior serious felony conviction, thus exposing him to a mandatory 25-year-to-life sentence under the three strikes law.[3] Before trial, in exchange for Holloway's jury waiver, the People agreed to strike one of the alleged prior convictions. Holloway expressly waived his jury trial right both as to the substantive offense and the remaining prior conviction.

The court trial was before a different judge than the one before whom Holloway had waived his jury trial right. In response to the trial judge's inquiry, the prosecutor stated that the jury waivers had been taken earlier. The trial court and parties agreed to try the case and Holloway's dismissal motion based on alleged outrageous police conduct concurrently. After presenting their evidence as to the cocaine possession charge and the defense dismissal motion, the People rested. The trial court invited argument on guilt

---

[3]The information alleged Holloway was convicted of voluntary manslaughter in 1975 and robbery in 1980. Holloway admitted the 1980 robbery conviction. Holloway's probation report disclosed he also had convictions in 1979 for grand theft, 1981 for phencyclidine (PCP) sales, and 1989 for battery.

and on the dismissal motion. The parties chose to argue guilt first. The trial court found Holloway guilty. The trial court then heard argument on and denied the dismissal motion, discussed above in the facts and Discussion part I. Holloway never sought to bifurcate trial of the prior from trial of the cocaine possession charge.

The trial judge then asked if he could "proceed to sentencing?" The following colloquy occurred: "[Holloway's counsel]: I have a problem. We just did a court trial. The court trial is completed. I didn't bifurcate priors. *I had agreed I would admit one of the priors.* But at this point in time, I don't think the prior was proved. [¶] THE COURT: No one at this point in time has mentioned to me there were priors alleged. . . . [I]n our conversations among the three of us relating to this case, there was not a mention to me of priors having been alleged. [¶] I see now, having gone back and read the information, it looks like two prior felony convictions were alleged . . . . [¶] . . . [¶] . . . How do we wish to proceed now? [¶] [Holloway's counsel]: I would take the position at this point that the prior was not proved. [¶] We had an agreement before we started the trial that the [P]eople would make a motion to strike one of the priors in the interests of justice if . . . Holloway agreed to waive jury trial, and that was our agreement and we proceeded that way. [¶] *[The prosecutor] and I discussed whether or not . . . Holloway would agree to admit the prior conviction if he was convicted, and I spoke to . . . Holloway and he said he would.* [¶] However, it is my position now, the court trial was completed, there was no bifurcation of the prior because we were before the court and the [P]eople haven't proved any priors." (Italics added.)

The prosecutor responded that "technically that is true. But [Holloway's counsel] and I just informally before we started we discussed whether he was going, I think things were worked out between us informally. [¶] . . . [¶] Simply out of course of habit I proceeded with the trial. I assumed we were bifurcating it even though it wasn't done on the record." Later, Holloway's counsel repeated, "*I agreed we would admit the prior,* but as the trial proceeded along there was no request and there was nothing offered during the course of the trial. [¶] I mean, I have to look out for . . . Holloway's right[s]. It's my position the [P]eople didn't prove the one prior they had available." (Italics added.) Later, the trial court denied Holloway's motion to preclude the People from presenting proof of the prior. Over Holloway's objection, the trial court permitted the People to reopen to present proof of the one prior. Holloway then admitted the prior, reserving his right to raise this issue on appeal.

We reject Holloway's claim that the trial court violated the double jeopardy prohibition by permitting the prosecution to reopen to present evidence

of the prior conviction *after* having found him guilty of possessing cocaine. First, by expressly telling the prosecutor he would admit the one remaining prior conviction, Holloway told the prosecutor he need not present evidence of it. This expressed willingness to plead constituted either an implied assent to bifurcation or a waiver of any right to insist that proof of the prior be presented in a single evidentiary phase. While the prosecutor and the trial court inexplicably forgot to secure the admission before the prosecutor rested, the proceedings were not yet concluded. Given that prior convictions may be alleged and proved after a verdict but before imposition of sentence, there was no error in permitting the prosecutor to reopen to prove the prior convictions. (See *People* v. *Goss* (1992) 7 Cal.App.4th 702, 706 [9 Cal.Rptr.2d 412]; *People* v. *Ceja* (1988) 205 Cal.App.3d 1296 [253 Cal.Rptr. 132]; *People* v. *Rodriguez* (1984) 152 Cal.App.3d 289 [199 Cal.Rptr. 433].) Although the proceedings were not technically bifurcated, the proceedings had not yet been concluded. Thus, reopening to hear the evidence was not "too late." (*People* v. *Yancy* (1961) 196 Cal.App.2d 665, 667 [16 Cal.Rptr. 766].)

Moreover, even if double jeopardy principles applied, these procedures did not violate them. In a bifurcated jury trial of new offenses and prior conviction allegations, where the trial court erroneously dismissed the jury after its return of guilty verdicts and before the prosecution offered evidence of the prior convictions, our Supreme Court, after "assum[ing], without deciding, that double jeopardy principles apply to allegations of prior convictions [citations], and that jeopardy attached as to the alleged prior convictions at the time the jury was sworn to determine defendant's guilt of the current charges." (*People* v. *Saunders* (1993) 5 Cal.4th 580, 593 [20 Cal.Rptr.2d 638, 853 P.2d 1093]), held that impaneling a second jury to try the prior conviction allegations over the defendant's objection did not violate double jeopardy. (*Id.* at pp. 593-597.) The same is true in our case. This is especially true where, as here, Holloway suffered no prejudice by the proceeding. The prior conviction had been alleged. Holloway knew of it, and had even told the prosecutor he would admit it. No new evidence was presented. Sentence had not yet been imposed. Applying the double jeopardy prohibition on these facts would be to apply the prohibition rigidly and mechanically, in a situation where Holloway never was subjected to multiple trials of the prior conviction allegation. The double jeopardy prohibition is not to be so applied. (*Id.* at p. 593.) The only supporting authority relied on by Holloway, *People* v. *Hockersmith* (1990) 217 Cal.App.3d 968 [266 Cal.Rptr. 380], was expressly disapproved on this point. (*People* v. *Saunders, supra,* 5 Cal.4th at p. 597, fn. 9.) Thus, the trial court did not violate the

double jeopardy prohibition by permitting the prosecutor to reopen to present evidence of the prior conviction.[4]

## III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

We remand the matter for resentencing in which the trial court should exercise its discretion whether to dismiss the prior strike. In all other respects, we affirm the judgment.

Spencer, P. J., and Masterson, J., concurred.

A petition for a rehearing was denied September 5, 1996.

---

[4]In reaching our conclusion, we do not rely on *People* v. *Coronado* (1995) 12 Cal.4th 145, 156-159 [48 Cal.Rptr.2d 77, 906 P.2d 1232]. The Attorney General argues *Coronado* held that double jeopardy principles did not apply to prior conviction allegations. *Coronado* did not address, let alone resolve, this issue.

*See footnote, *ante*, page 1757.

Pages 1198-1443:

(*In re Marriage of Padilla*[1]; *People* v. *Loeun*[2]; *County of San Diego* v. *State of California*[3]; *American Federation of Labor* v. *Unemployment Ins. Appeals Bd.*[4]; *Western Security Bank* v. *Superior Court*[5]; *People* v. *Superior Court (Missamore)*[6]; *Arnett* v. *Pearce*[7]; *Wm. R. Clarke Corp.* v. *Safeco Ins. Co.*[8]; *People* v. *Campos*[9]; *County of San Bernardino* v. *City of San Bernardino*[10]; and *Garcia* v. *McCutchen*[11])

REVIEWS GRANTED

[1]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[2]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[3]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[4]See 13 Cal.4th 1017 for Supreme Court opinion.
[5]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[6]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[7]On December 11, 1996, review dismissed and cause remanded to Court of Appeal, Sixth Appellate District.
[8]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[9]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[10]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.
[11]Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.