Filed 3/6/24  P. v. Hollie CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097534 |
| v. | (Super. Ct. No. 19FE006899) |
| JERMAINE HOLLIE, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Jermaine Hollie asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Defendant filed a supplemental brief.  Having reviewed the record and defendant's supplemental brief, we have found no arguable error that would result in a disposition more favorable to defendant.  But we have identified a mistake in the oral pronouncement of judgment.  We will modify the judgment and affirm the judgment as modified.

1

# I

Jacqueline Doe testified that defendant raped her in September 2018. At the time, she lived in a Sacramento group home after she was removed from her mother's care. She sometimes panhandled at a gas station and defendant had given her a few dollars.

On September 3, 2018, Jacqueline went to visit friends at a hotel. She heard a horn and saw defendant sitting in a vehicle. He said he wanted to talk with her. She eventually got in the vehicle and defendant drove to a nearby business with a roll-up garage door. Defendant parked and closed the door. They smoked marijuana and talked.

Defendant told Jacqueline he wanted to have sex with her, but she said no. He repeated his request multiple times, and each time Jacqueline told him no. She became extremely anxious. She told him she was only 14 years old. She tried to leave, but defendant grabbed her by her backpack, jerked her backwards, and told her, "Don't do that before I choke you."

Although there was some conflicting evidence, Jacqueline said defendant forced her to orally copulate him. Defendant then pulled down her pants and underwear, inserted his penis into her vagina, and had sex with her for about 30 minutes. Afterward defendant gave her snacks and money, and drove her back near the group home.

Jacqueline reported that she had been raped and she went to a hospital for a sexual assault forensic examination. DNA samples collected from Jacqueline's vagina and underwear contained DNA consistent with defendant's DNA sample.

In addition to Jacqueline, the prosecutor called two witnesses under Evidence Code section 1108 to testify about prior instances of sexual misconduct by defendant. The parties stipulated that in 1996 Athena Doe was the victim of rape and forced penetration by a foreign object and that in 2007 defendant was found guilty of those offenses. Defendant admitted at trial that he raped and digitally penetrated Athena Doe while she was unconscious.

2

The parties also stipulated that in September 1998, Sarah Doe reported being raped, and in 2005, the male DNA sample from Sarah Doe was eventually linked to defendant. Sarah testified that in September 1998, when she was 15 years old, defendant forcefully pulled her into a car and took her to a nearby duplex. Defendant dragged her to a bedroom, removed her clothes, inserted his fingers in her vagina, and had sexual intercourse with her while she cried. Defendant testified at trial that the sex with Sarah was consensual.

Defendant testified on his own behalf. While he was aware that Jacqueline was underaged, he claimed she never told him she was 14 years old. According to defendant, when he asked how much she wanted for sexual intercourse, Jacqueline requested $80, and defendant paid her. He denied forcibly raping Jacqueline.

The jury found defendant guilty of sexual intercourse with a minor over the age of 13 by means of force, violence, or duress (Pen. Code, § 261, subd. (a)(2) - count 1),[1] and committing a lewd and lascivious act on a child of 14 years (§ 288, subd. (c)(1) - count 2). The jury found true that the victim was particularly vulnerable (California Rules of Court, rule 4.421(a)(3)),[2] that defendant had engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)), that he had served a prior prison term (rule 4.421(b)(3)), and that he was on probation, mandatory supervision, postrelease community supervision, or parole when he committed the offenses (rule 4.421(b)(4)). The trial court found true that defendant had two prior serious and violent felony convictions under the three strikes law (§§ 667, subd. (e)(2), § 1170.12, subd. (c)(2)) and under section 667.6, subdivision (a): a December 2007 rape conviction (§ 261, subd. (a)(2)), and a December 2007 conviction for sexual penetration with a foreign

---

[1] Undesignated statutory references are to the Penal Code.

[2] Undesignated rule references are to the California Rules of Court.

3

object by force (§ 289, subd. (a)(1)). Although the trial court recognized it had discretion to strike one or both prior conviction enhancements, it declined to exercise its discretion because it found defendant was a serial sex offender who presented a risk to public safety.

The trial court sentenced defendant to an aggregate 60 years to life in state prison, consisting of the following: five years on each count for the prior convictions under section 667.6, subdivision (a) and section 667, subdivision (a)(1), respectively, and consecutive terms on each count of 25 years to life. The amended information had charged defendant with two five-year enhancements under section 667.6, subdivision (a), but it did not reference section 667, subdivision (a)(1). The trial court ordered defendant to pay minimum mandatory fines and assessments and awarded him 1,479 days of presentence credit (1,286 actual days and 193 conduct days).

Additional background is set forth in the discussion as relevant to defendant's contentions in his supplemental brief.

## II

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief.

Defendant filed a supplemental brief raising several issues. He contends (A) the prosecutor engaged in misconduct and violated his due process rights by introducing "Exhibit 22A," a Bay Alarm surveillance video; (B) the failure to obtain other surveillance video and to disclose the Bay Alarm surveillance video prior to the preliminary hearing violated his due process rights; (C) the trial court erred in denying

4

defendant's *Marsden*[3] motion; and (D) the trial court erred in excluding defendant's medical records to establish his heart and erectile dysfunction conditions.

A

Defendant contends the prosecutor committed prejudicial misconduct by introducing Exhibit 22A, a Bay Alarm surveillance video clip, which he argues was false and misleading and violated his due process rights. Specifically, defendant asserts the video does not capture his first interaction with Jacqueline, which was paramount to his defense that she was soliciting prostitution in a Del Taco restaurant parking lot rather than panhandling. He also complains the video is not time stamped or date stamped, and that the video clip represents only a small fraction of the full five-hour surveillance video, which he claims he never saw. Finally, he contends that Exhibit 22A is not consistent with GPS tracking evidence, which shows that he was at the Del Taco parking lot for approximately one minute rather than the over two minutes shown on Exhibit 22A.

Defendant did not raise any of these objections prior to trial or when the prosecutor offered Exhibit 22A for admission during trial. Nor did defendant object that the prosecutor had engaged in prosecutorial misconduct by offering the video into evidence. He has therefore forfeited all his appellate challenges to Exhibit 22A. (*People v. Ledesma* (2006) 39 Cal.4th 641, 726; *People v. Bryant, Smith & Wheeler* (2014) 60 Cal.4th 335, 408, 410; *People v. Marks* (2003) 31 Cal.4th 197, 228.)

B

Defendant next contends the trial court erred by denying his motion to dismiss based on the failure to collect surveillance video from the Del Taco restaurant and the post-preliminary hearing disclosure of the Bay Alarm surveillance video.

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

Prior to trial, defendant moved to dismiss the case on the grounds that the People violated his due process rights by failing to gather surveillance video from Del Taco showing the restaurant's parking lot and by failing to disclose, prior to the preliminary hearing, the Bay Alarm surveillance video that captured a portion of the Del Taco parking lot, which defendant asserted could have been helpful in cross-examining the investigating detective. The People opposed the motion, arguing that there was no evidence of bad faith in not gathering the Del Taco surveillance video and that the failure to turn over the Bay Alarm video prior to the preliminary hearing was inadvertent and would not have changed the magistrate's probable cause determination given the DNA evidence linking defendant to the samples taken from Jaqueline's vagina and underwear during the sexual assault examination.

The trial court denied the motion, finding no due process violation regarding either video. The trial court found there was no bad faith and the prosecution noticed the Bay Alarm video to the defense in a timely manner, as it was referenced in the People's discovery disclosure made several months before the preliminary hearing occurred. The trial court also found that the Bay Alarm video would not have changed the outcome of the preliminary hearing.

Due process guarantees under the federal Constitution imposing a duty on the state to preserve "evidence that might be expected to play a significant role in the suspect's defense." (*California v. Trombetta* (1984) 467 U.S. 479, 488; see also *Arizona v. Youngblood* (1988) 488 U.S. 51.) Such evidence " 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " (*People v. Montes* (2014) 58 Cal.4th 809, 837 (*Montes*).) Rather than establishing the apparent exculpatory value of the lost evidence, a defendant also may show that the " ' " 'potentially useful' " ' " evidence was destroyed as a result of bad faith. (*People v. Fultz* (2021) 69 Cal.App.5th 395, 424-425.)

6

Due process, however, generally does not require the police to collect particular items of evidence, although some cases may arise in which the failure to collect evidence could justify sanctions against the prosecution at trial.  (*Montes, supra*, 58 Cal.4th at pp. 837-838 [no duty to collect blood samples]; see *People v. Mills* (1985) 164 Cal.App.3d 652, 656 [no duty to collect breath samples]; see also *People v. Harris* (1985) 165 Cal.App.3d 324, 329 ["To date there is no authority for the proposition that sanctions should be imposed for a failure to *gather* evidence"].)  " 'The police cannot be expected to "gather up everything which might eventually prove useful to the defense." ' "  (*Montes,* at p. 837; *People v. Duff* (2014) 58 Cal.4th 527, 549 [" 'Due process does not impose upon law enforcement "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution" ' "].)  We uphold a trial court's ruling on a *Trombetta/Youngblood* motion on appeal if we find substantial evidence supports the ruling.  (*Montes,* at p. 837.)

Here, substantial evidence supports the trial court's finding that although the police may have been able to collect surveillance video from Del Taco had they acted sooner after taking Jacqueline's initial sexual assault report, officers did not act in bad faith by failing to secure the video.  As the trial court noted, this is not a case where evidence initially gathered was destroyed by the government.  (*Montes, supra*, 58 Cal.4th at p. 837.)  A detective testified there was some initial confusion as to where Jaqueline had first encountered defendant.  The detective attempted to contact the business owner two times to get the video, but never received a call back.  The trial court did not err in denying defendant's motion to dismiss the charges based on the government's failure to collect video surveillance from Del Taco.

As for the Bay Alarm video, the Fourteenth Amendment's due process clause requires the prosecution to disclose evidence to a criminal defendant that is both favorable and material on either guilt or punishment.  (*In re Sassounian* (1995) 9 Cal.4th

7

535, 543-544; see *Brady v. Maryland* (1963) 373 U.S. 83, 87.)  Evidence is favorable if it either helps the defendant or hurts the prosecution, including for purposes of impeachment; evidence is material if it is reasonably probable that had it been disclosed to the defense the result would have been different.  (*In re Sassounian*, at p. 544.)  The prosecution's duty to disclose favorable material evidence applies to preliminary hearings.  (*Stanton v. Superior Court* (1987) 193 Cal.App.3d 265, 267.)

"[T]he precise scope of a defendant's due process right to disclosure and the determination of whether that right has been violated are necessarily tailored to the context and purpose of the preliminary hearing." (*Bridgeforth v. Superior Court* (2013) 214 Cal.App.4th 1074, 1087.)  "[T]he standard of materiality is whether there is a reasonable probability that disclosure of the exculpatory or impeaching evidence would have altered the magistrate's probable cause determination with respect to any charge or allegation." (*Ibid.*)

Here, we agree with the trial court's finding that the delay in providing the Bay Alarm surveillance video until after the preliminary hearing was not material to the probable cause determination.  Substantial evidence supports the trial court's finding that the People had identified the existence of the video in a report included within its discovery disclosure several months prior to the preliminary hearing.  While it appears, as the prosecutor explained, that the actual video footage was inadvertently omitted from the thumb drive timely provided to defense counsel before the preliminary hearing, had defense counsel reviewed the thumb drive against the report, he would have been alerted to the fact that the actual video footage was missing.

In any event, we agree with the trial court that the Bay Alarm video was not exculpatory and would not have changed the probable cause determination.  The video merely showed a dark SUV pull into the Del Taco parking lot, pick up an individual, and drive away.  Both Jaqueline and defendant agreed those events happened.

8

Defendant's primary defense, moreover, was not based on identity -- that is, that he was not the driver seen in the SUV picking up the individual in the video or that he was not the person that had sex with Jacqueline. Given the DNA evidence linking defendant to sexual activity with Jacqueline, defendant's defense was that he did not force Jacqueline to have sex against her will because she offered him sex in exchange for money as an act of prostitution. Nothing in the Bay Alarm surveillance video sheds light on this defense. The trial court therefore properly denied the motion to dismiss because the video was not material to the probable cause determination.

C

Defendant further contends the trial court erred in denying his *Marsden* motion to replace his appointed attorney on the first day of trial.

"*Marsden* motions are subject to the following well-established rules." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.) When a defendant seeks to remove his appointed counsel, asserting inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. Relief is warranted only if the record clearly shows that the first appointed attorney is not providing adequate representation or that defendant and counsel have an irreconcilable conflict that will likely result in ineffective representation. (*Ibid.*) We review a trial court's denial of a *Marsden* motion for an abuse of discretion. (*Ibid.*) There is no abuse of discretion unless the defendant shows that the failure to replace the appointed attorney would " ' "substantially impair" ' " the defendant's right to assistance of counsel. (*Ibid.*)

Here, the judge gave both defendant and his appointed attorney ample opportunity to be heard on the *Marsden* motion. Defendant complained about how his attorney argued the motion to dismiss for due process violations, essentially disagreeing with the trial court's denial of the motion to dismiss and rearguing reasons why he believed the trial court should have granted the motion. He also wanted to present medical records

9

to show he could not have done what Jacqueline accused him of, i.e., have sex for 30 minutes.

Appointed counsel, who had 35 years of criminal defense experience and had handled numerous sexual assault cases, explained that he and defendant had met numerous times to prepare for the motion to dismiss and had watched the surveillance video together to identify when defendant first appears in the video. Based on a review of the reports and his meetings with defendant, counsel believed he had adequately presented the arguments defendant wanted to make on the motion to dismiss. As for the medical records, counsel acknowledged that criminal defendants often want to put on medical information to show they could not have committed the alleged crimes, but he had to make an informed strategic decision regarding what would be most relevant and compelling for a jury.

Although the record clearly discloses strategy disagreements between defendant and his appointed counsel, it demonstrates no failure by counsel to provide adequate representation nor an irreconcilable conflict between defendant and his counsel. The trial court did not err in denying the *Marsden* motion.

D

In addition, defendant contends the trial court erred in excluding defendant's medical records concerning his heart condition and his erectile dysfunction during trial.

After the People rested, but before defendant took the stand, the People moved to preclude defendant from testifying that he had a heart condition to garner sympathy from the jury, arguing his medical condition was irrelevant. Defense counsel countered that testimony regarding defendant's heart condition was intended to call into question the credibility of Jacqueline's testimony that defendant had sex with her for 30 minutes; counsel stated that he did not intend to introduce any medical records on the subject. The trial court ruled that defendant could briefly reference his heart condition in the context of the duration of the sexual act and not over-exerting himself but could not

10

testify in detail with medical terms about the condition. Defendant thereafter testified within the trial court's parameters regarding his heart condition and how the condition precluded him from over-exerting himself.

Following a break in his testimony, defendant asked the trial court to reconsider its ruling on evidence of his medical condition, arguing he should be permitted to discuss in greater detail his ventricular arrhythmia; he wanted to introduce evidence related to his pacemaker/defibrillator, which was being monitored at the time of his sexual encounter with Jacqueline. The trial court denied the request, finding that because defendant already testified to having sex with Jacqueline, the medical records were irrelevant and, under Evidence Code section 352, were simply an attempt to garner sympathy from the jury.

The determination of whether to admit or exclude evidence during trial is reviewed for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197; *People v. Alvarez* (1996) 14 Cal.4th 155, 203 ["appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion"].) Under the abuse of discretion standard, we will not disturb a trial court's decision to exclude evidence except upon a showing that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Peoples* (2016) 62 Cal.4th 718, 745.)

Here, there was nothing arbitrary or patently absurd about the trial court's ruling. It allowed defendant to testify about his heart condition on direct, so the jury had an opportunity to consider that evidence. Moreover, defendant did not deny that he had sexual intercourse with Jacqueline, and DNA evidence connected him to the crime. Although the duration of the sex might have been relevant to Jacqueline's credibility, the DNA evidence supported her credibility. And evidence of duration was irrelevant to whether the intercourse was forced. Any alleged error in excluding the evidence was harmless under any standard.

11

E

After reviewing the record, we have discovered a mistake in the oral pronouncement of judgment. Based on defendant's two prior felony convictions for rape (§ 261, subd. (a)(2)) and sexual penetration with a foreign object (§ 289, subd. (a)(1)), the amended information includes two enhancements under section 667.6, subdivision (a),[4] which provides for an additional five years for certain qualifying prior convictions, including rape and sexual penetration.

At sentencing, however, it appears the trial court misspoke when it orally pronounced that it was imposing five years for each of defendant's prior convictions based on section 667.6, subdivision (a) and section 667, subdivision (a)(1), respectively. Because defendant was not charged with any enhancement pursuant to section 667, subdivision (a)(1), the trial court mistakenly referenced that code section rather than section 667.6, subdivision (a) for both enhancements as charged in the amended information. We will modify the judgment to reflect that the two five-year enhancements were imposed pursuant to section 667.6, subdivision (a), and we will direct that the abstract of judgment and sentencing minutes be corrected to reflect the judgment as modified.

DISPOSITION

The judgment is modified to reflect that the two five-year enhancements for defendant's prior sexual convictions were imposed pursuant to section 667.6, subdivision (a). As so modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment and sentencing minutes to reflect the judgment as

---

[4] Section 667.6, subdivision (a) provides: "A person who is convicted of an offense specified in subdivision (e) and who has been convicted previously of any of those offenses shall receive a five-year enhancement for each of those prior convictions." Subdivision (e), in turn, includes prior convictions for rape (§ 261) and sexual penetration (§ 289). (§667.6, subd. (e).)

12

modified, and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                                      /S/

                                                   MAURO, J.

We concur:

_____/S/_____
EARL, P. J.

_____/S/_____
BOULWARE EURIE, J.

13